**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1243
_____

BILL H. DOMINGUEZ, ON BEHALF OF HIMSELF
AND ALL OTHERS SIMILARLY SITUATED,

Appellant

v.

YAHOO, INC.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil Action No. 2-13-cv-01887)
District Judge:  Honorable Michael M. Baylson

Submitted under Third Circuit LAR 34.1(a)
on October 2, 2017

Before:  SHWARTZ and ROTH*, <u>Circuit Judges</u> and
PAPPERT, <u>District Judge</u>

(Opinion filed:  June 26, 2018)

*Honorable Gerald J. Pappert, United States District Judge for the
Eastern District of Pennsylvania, sitting by designation.

Gerald E. Arth, Esq.
Abraham C. Reich, Esq.
Robert S. Tintner, Esq.
Fox Rothschild
2000 Market Street
20th Floor
Philadelphia, PA 19103

James A. Francis, Esq.
David A. Searles, Esq.
John Soumilas, Esq.
Francis & Mailman
100 South Broad Street
Land Title Building, 19th Floor
Philadelphia, PA 19110

                Counsel for Appellant


Ian C. Ballon, Esq.
Lori Chang, Esq.
Greenberg Traurig
1840 Century Park East
Suite 1900
Los Angeles, CA 90067

Brian T. Feeney, Esq.
Greenberg Traurig
2001 Market Street
2700 Two Commerce Square
Philadelphia, PA 19103

                Counsel for Appellee

---

**OPINION**

---

ROTH, Circuit Judge

Appellant Bill Dominguez sued Yahoo!, Inc., alleging that Yahoo violated the Telephone Consumer Protection Act (TCPA)[1] by sending him thousands of unsolicited text messages. Dominguez now returns to this Court for the second time appealing the District Court's grant of summary judgment in favor of Yahoo. For the reasons stated below, we will affirm.

I.

The facts underlying this case are set forth at length in our prior opinion,[2] and we provide only a brief recapitulation here. Dominguez purchased a cell phone with a reassigned telephone number. The prior owner of the number had subscribed to Yahoo's Email SMS Service, through which a user would receive a text message each time an email was sent to the user's Yahoo email account. Because the prior owner of the number never canceled the subscription, Dominguez received a text message from Yahoo every time the prior owner received an email. In an attempt to turn off the notifications, Dominguez pursued various courses of action, all of which proved unsuccessful. Ultimately,

---

[1] 47 U.S.C. § 227.
[2] *See Dominguez v. Yahoo, Inc.*, 629 F. App'x 369 (3d Cir. 2015).

3

Dominguez received approximately 27,800 text messages from Yahoo over the course of 17 months.

Dominguez then filed a putative class action alleging that Yahoo had violated the TCPA. Under the TCPA, it is unlawful to make or send a non-emergency call or text message "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service."[3] Thus, Dominguez's lawsuit has always depended upon his assertion that Yahoo's Email SMS Service was an "automatic telephone dialing system," *i.e.*, an autodialer. The TCPA defines an autodialer as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."[4]

The District Court first granted summary judgment in favor of Yahoo in 2014 after concluding that the undisputed evidence demonstrated that the Email SMS Service did not have the capacity to store or produce telephone numbers using a random or sequential number generator.[5] In 2015, while Dominguez's appeal of that decision was pending, the FCC issued a declaratory ruling and order (the 2015 Declaratory Ruling), which concluded that "the capacity of an

---

[3] 47 U.S.C. § 227(b)(1)(A)(iii). Although the text of the statute refers only to "calls," we have held that, under the TCPA, that term encompasses text messages. *See, e.g.*, *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013).

[4] 47 U.S.C. § 227(a)(1).

[5] *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637, 643-44 (E.D. Pa. 2014).

autodialer is not limited to its current configuration but also includes its potential functionalities."[6] In other words, a device could qualify as an autodialer under the TCPA if it had the *latent or potential capacity* to store or produce telephone numbers using a random or sequential number generator, and to dial those numbers. In light of this intervening ruling from the FCC, we vacated the District Court's judgment and remanded the case for further consideration.[7] On remand, Dominguez amended his complaint to allege that the Email SMS Service "ha[d] the potential capacity to place autodialed calls."[8] Yahoo again moved for summary judgment, and both parties submitted expert reports addressing the Email SMS Service's latent or potential capacity.

The District Court granted Yahoo's motion to exclude Dominguez's expert reports and once again granted summary judgment in favor of Yahoo.[9] As relevant to the present appeal, the court concluded that (1) the 2015 Declaratory Ruling should not apply in this case under principles of retroactivity, (2) under the applicable "present capacity" standard, the Email SMS Service did not qualify as an autodialer, (3) in the alternative, even if the 2015 Declaratory Ruling were applicable in this case, Dominguez had not presented any evidence that the Email SMS Service had the latent or potential capacity to generate random numbers

---

[6] In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2015 Declaratory Ruling), 30 FCC Rcd. 7991, 7974 ¶ 16 (2015).

[7] *Dominguez*, 629 F. App'x at 373.

[8] App. at 116 (Am. Compl.).

[9] *Dominguez v. Yahoo!, Inc.*, No. 13-1887, 2017 WL 390267, at *1 (E.D. Pa. Jan. 27, 2017).

because Dominguez's expert reports did not satisfy the standard for admissibility under *Daubert*, and (4) even if Dominguez's expert reports were admissible, Dominguez had failed to provide evidence that the Email SMS Service was capable of both generating random and sequential numbers and dialing those numbers. Dominguez appealed.

While this appeal was pending, the United States Court of Appeals for the District of Columbia Circuit issued its opinion in *ACA International v. FCC*,[10] a case involving consolidated challenges to the FCC's 2015 Declaratory Ruling. The D.C. Circuit held that the FCC had exceeded its authority by interpreting the term "capacity" to include any latent or potential capacity and described the FCC's approach as "utterly unreasonable in the breadth of its regulatory [in]clusion."[11] In particular, the D.C. Circuit took issue with the fact that "a straightforward reading of the [FCC's] ruling invites the conclusion that all smartphones are autodialers."[12] This was so because, as the FCC had conceded, any ordinary smartphone could achieve autodialer functionality by simply downloading a random-number-generating app.[13] The D.C. Circuit therefore set aside the FCC's 2015 Declaratory Ruling.[14]

---

[10] 885 F.3d 687 (D.C. Cir. 2018).

[11] *Id.* at 699 (internal quotation marks omitted) (alteration in original).

[12] *Id.*

[13] *Id.* at 696-97.

[14] *Id.* at 692.

## II.[15]

The decision in *ACA International* has narrowed the scope of this appeal.[16] In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling. Dominguez can no longer rely on his argument that the Email SMS Service had the latent or potential capacity to function as autodialer. The only remaining question, then, is whether Dominguez provided evidence to show that the Email SMS Service had the present capacity to function as autodialer.

Three of Dominguez's expert reports offer nothing to help resolve the present capacity question. Both the Krishnamurthy Report and the Christensen Report focus on

---

[15] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a grant of summary judgment, and make all inferences in favor of the nonmoving party. *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 62 (3d Cir. 2013). We review a District Court's decision to exclude expert testimony for an abuse of discretion. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008). This means that "[w]e will not interfere with the district court's decision 'unless there is a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *Id.* (quoting *In re TMI Litig.*, 193 F.3d 613, 666 (3d Cir. 1999)).

[16] Dominguez and Yahoo have both submitted letters under Rule 28(j) explaining their understanding of the impact of *ACA International* on this appeal.

latent or potential capacity. The Krishnamurthy Report proposes five possible ways in which the Email SMS Service could be modified to generate random or sequential numbers.[17] All of these proposed modifications would require several months of work to implement.[18] The Christensen Report is similarly speculative. Christensen opines that "[i]t *would have been* quite easy for one of normal skill in software programming to configure an application to cause mobile messages to be sent based on integration of off-the-shelf, commonly available random number generator programs," and concludes that "the equipment and systems that Yahoo relied upon . . . *had the latent capacity* to generate random and/or sequential ten digit numbers."[19] A third report, by Jeffrey Hansen, does not use the term "latent capacity" but presents similar analysis. The Hansen Report begins with the generalized assertion that "all computers can generate random or sequential numbers."[20] The report then proposes six computer code commands, which, Hansen asserts, could be written into Yahoo's operating system in order to generate wireless numbers randomly or sequentially.[21]

In his supplemental filings, Dominguez argues that, under *ACA International*, certain limited modifications may nevertheless fall within the scope of present capacity. He emphasizes the D.C. Circuit's comment that "[v]irtually any understanding of 'capacity' thus contemplates some future

---

[17] *See* App. at 306 (Krishnamurthy Report).

[18] *See* App. at 304, 321 (Krishnamurthy Report).

[19] App. at 1163, 1165 (Christensen Report) (emphasis added).

[20] App. at 372 (Hansen Report).

[21] App. at 373 (Hansen Report).

functioning state, along with some modifying act to bring that state about."[22]  Though that may be true, it does not follow that the Krishnamurthy, Christensen, or Hansen Reports create a triable factual issue regarding the present capacity of the Email SMS Service.  The reports are founded upon the exact type of hypothesizing that is foreclosed by *ACA International*.[23]  The District Court was therefore correct to exclude the Krishnamurthy, Christensen, and Hansen Reports, as they are irrelevant to the present capacity inquiry.[24]

---

[22] Rule 28(j) Letter from James A. Francis, Appellant's Counsel, to Patricia Dodszuweit, Clerk of Court, 3d Cir. (Mar. 28, 2018) (quoting *ACA Int'l*, 885 F.3d at 696).

[23] *ACA Int'l*, 885 F.3d at 696.  The D.C. Circuit noted that a correct understanding of "capacity" focuses "on considerations such as how much is required to enable the device to function as an autodialer: does it require the simple flipping of a switch, or does it require essentially a top-to-bottom reconstruction of the equipment?"  *Id*.  The types of modifications discussed by the Krishnamurthy and Christensen Reports—involving several months of work and the integration of unnamed external programs or applications—can hardly be characterized as the "simple flipping of a switch" and are far closer to a full reconstruction of the Email SMS System.  Although the modification proposed in the Hansen Report appears simpler in comparison, the addition of a short sequence of code to *any computer operating system* bears a striking similarity to the downloading of an app onto *any smartphone*—the modification that was at issue in *ACA International*.  *See id*. at 696-98.

[24] *Cf., e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) ("Rule 702 further requires that the evidence

Dominguez's final expert report, the supplemental declaration of Randall Snyder, also falls short of the admissibility standard. Snyder purports to address present, not just latent, capacity, repeatedly opining that "Yahoo's Email SMS Service system had the ability to generate random numbers and, in fact, did generate random numbers."[25] This opinion, however, is supported by little more than the same type of overbroad, generalized assertions found in the Hansen Report. Specifically, Snyder opines that "[t]he ability to generate random numbers is a fundamental function inherent in information technology computer systems employing the most common operating systems, security protocols and encryption."[26] Snyder goes on to explain the role that random number generators play in various commonly available computer operating systems, such as Microsoft Windows, Apple Mac OS, and UNIX, and posits that "it is a straightforward and very basic algorithm to use the available random number generation functions to generate ten-digit telephone numbers."[27] Notably absent, however, is any explanation of how the Email SMS System actually did or could generate random telephone numbers to dial. In that

---

or testimony assist the trier of fact to understand the evidence or to determine a fact in issue. . . . Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Although the District Court, not having the guidance of *ACA International*, focused its analysis primarily on reliability, we may affirm on any basis supported in the record. *See, e.g.*, *Fairview Twp. v. EPA*, 773 F.2d 517, 525 n.15 (3d Cir. 1985).

[25] App. at 977 (Snyder Supp. Decl.); *see also id*. at 978.

[26] App. at 974 (Snyder Supp. Decl.).

[27] App. at 976 (Snyder Supp. Decl.).

regard, the Snyder Supplemental Declaration is hardly less speculative than the expert reports of Krishnamurthy, Christensen, or Hansen—and raises the same concerns about the TCPA's breadth that the D.C. Circuit addressed in *ACA International*. Because it does not shed light on the key factual question actually at issue in this case—whether the Email SMS System functioned as an autodialer by randomly or sequentially generating telephone numbers, and dialing those numbers—the Snyder Supplemental Declaration, like the other expert reports, lacks fit or relevance and was therefore properly excluded.[28]

Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user.[29] There can be little doubt that Dominguez suffered great annoyance as a result of the unwanted text messages. But those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation. The TCPA's prohibition on

---

[28] *See, e.g.*, *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994) ("[A]dmissibility depends in part on the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case." (internal quotation marks omitted)); *see also supra* note 24.

[29] *See* App. at 248-49 (Decl. of Gareth Shue).

11

autodialers is therefore not the proper means of redress.

## III.

For the above reasons, we will affirm the District Court's orders excluding Dominguez's expert reports and granting summary judgment in favor of Yahoo.