# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1961

_____

Colby L. Beal

*Plaintiff - Appellant*

v.

Outfield Brew House, LLC, doing business as Budweiser Brew House

*Defendant - Appellee*

_____

No. 20-3581

_____

Zachary Smith, individually and on behalf of all others similarly situated;
Brian Kagarice

*Plaintiffs - Appellants*

v.

Truman Road Development, LLC, doing business as No Other Pub,
formerly known as Kansas City Sporting and Social Club, LLC;
The Cordish Companies, Inc.; Entertainment Consulting International, LLC

*Defendants - Appellees*

United States of America

*Intervenor - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri
_____

Submitted: November 17, 2021
Filed: March 24, 2022
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

GRASZ, Circuit Judge.

This is a consolidated appeal with a single issue: whether an automated marketing system that sends promotional text messages to phone numbers randomly selected from a database of customers' information is an automated telephone dialing system (an "Autodialer") under the Telephone Consumer Protection Act (the "TCPA"). The district court[1] held it was not. We agree.

## I. Background

Appellees Outfield Brew House, LLC and Truman Road Development, LLC operate separate bar establishments (the "Establishments"). The Establishments use a marketing software called "Txt Live," which allows them to send text messages to former and potential customers. Appellants are persons who received promotional text messages from one of the Establishments through Txt Live. Appellants argue these messages violated the TCPA because they were sent using an Autodialer without Appellants' consent. The sole dispute in this appeal is whether Txt Live falls within the TCPA's definition of an Autodialer.

---

[1]The Honorable Douglas Harpool, United States District Judge for the Western District of Missouri, and the Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

Understanding the function of the Txt Live software is central to resolving this issue. Txt Live is used to maintain a database that stores the contact information of the Establishments' former and potential customers. The Establishments' employees manually enter the contact information, including phone numbers, into the Txt Live database. Txt Live is not capable of randomly or sequentially generating phone numbers.

To send a mass text message through Txt Live, employees first narrow the list of recipients using filters. Txt Live's filters can limit text messages to a certain target audience based on a variety of demographic factors. Next, the employees select the number of potential customers to whom the text message will be sent. The employees then draft or select the content of the message and hit "send."

When the employees hit "send," Txt Live performs a few tasks. First, Txt Live applies the chosen filters. Txt Live then shuffles the target contacts using a numerically-based randomizer. If the number of people who meet the filtered criteria exceed the number of people to whom the message will be sent, Txt Live selects the recipients at the top of the randomized list first. Appellants compare the system to shuffling a deck of cards and then taking cards from the top of the shuffled deck. The manually entered phone numbers are shuffled, and Txt Live selects the recipients from the top of the shuffled list. Txt Live then sends the message to the selected phone numbers.

Appellants received promotional text messages from one of the Establishments through this process and brought suit under 47 U.S.C. § 227, which makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [Autodialer] . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). In each case, the district court granted summary judgment in favor of the Establishment, holding Txt Live did not meet the statutory definition of an Autodialer.

## II. Analysis

We review the district court's summary judgment ruling de novo. *See LaCurtis v. Express Med. Transporters, Inc.*, 856 F.3d 571, 576 (8th Cir. 2017). The parties agree that this appeal comes down to whether Txt Live falls within the definition of an Autodialer. *See* 47 U.S.C. § 227(a)(1). We agree with the district court that it does not, and therefore, the Establishments are entitled to summary judgment.

The TCPA defines an Autodialer as:

equipment which has the capacity—
(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
(B) to dial such numbers.

*Id.* The parties dispute the meaning of the term "produce" as used in § 227(a)(1)(A), and whether it includes Txt Live's random selection of phone numbers from an existing list of contacts. We conclude it does not.

When interpreting a statute, we "begin by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *United States v. I.L.*, 614 F.3d 817, 820 (8th Cir. 2010) (alteration in original) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)). "Statutory construction 'is a holistic endeavor,' and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (internal citation omitted) (quoting *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). While a phrase may be susceptible to certain meanings when viewed in isolation, its plain meaning "is often clarified by the remainder of the statutory scheme[.]" *Timbers of Inwood*, 484 U.S. at 371.

So to accurately determine the meaning of "produce" in § 227(a)(1), we must consider its context, especially its subject—that is, the thing doing the producing. Under the language of § 227(a)(1), a "random or sequential number generator" does the producing. While subjects in other contexts may produce by selecting, a generator produces by generating. An electrical generator produces by generating electricity. A password generator produces by generating a password. And a random number generator produces by *generating* a random number. Because Txt Live does not generate phone numbers to be called, it does not "produce telephone numbers to be called" for purposes of § 227(a)(1) of the TCPA.

Appellants point to dictionary definitions and common uses of the term "produce" to suggest it includes "select" or "bring forth." But this is the kind of isolated and contextless approach rejected by precedent. *See U.S. Nat'l Bank of Or.*, 508 U.S. at 455. While dictionary definitions and common uses of a word can be helpful, they will derail accurate interpretation if we improperly determine that the meaning of a term used in a statute includes *any* existing definition or use of that term. Just because "produce" can mean "select" in other contexts does not mean it includes "select" here. And just as an electrical generator does not produce by selecting electricity, a random number generator does not produce by selecting a random number.

Appellants argue our interpretation writes "generated" into the statute, citing *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 465–66 (7th Cir. 2020) (rejecting an interpretation of § 227(a)(1) that effectively inserts the term "generated" into the statute). However, our interpretation does no such thing. We simply interpret the word "produce." And we conclude "produce," because of the language used in § 227(a)(1), does not mean "select."

Our interpretation is strongly bolstered by the Supreme Court's interpretation of § 227(a)(1) in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), which was decided after this district court's summary judgment ruling. While *Facebook* addressed a different issue than is presented here, we find the principles announced

by the Court support our interpretation. In *Facebook*, a social media platform ("Facebook") maintained a security feature that sent users "login notification" text messages when an unknown device attempted to log in to a user's account. *Facebook*, 141 S. Ct. at 1168. Putative class representative Noah Duguid argued Facebook's system was an Autodialer, even though it did not make use of a random or sequential number generator, because it stored phone numbers and sent automated text messages to the stored numbers. *Id.* at 1169.

The issue in *Facebook* was whether the clause "using a random or sequential number generator" under § 227(a)(1) only modifies the word "produce" or whether it modifies both "store" and "produce."[2] *Id.* The Court held the clause modifies both "store" and "produce," meaning the definition of Autodialer "excludes equipment that does not 'us[e] a random or sequential number generator.'" *Id.* at 1169–71 (quoting § 227(a)(1)(A)). In reaching this conclusion, the Court emphasized that § 227 "target[s] a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *Id.* The Court reasoned, "Expanding the definition of an [A]utodialer to encompass any equipment that merely stores and dials telephone numbers would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." *Id.*

Txt Live is exactly the kind of equipment *Facebook* excluded from § 227(a)(1)—"equipment that merely stores and dials telephone numbers." *Id.* And while Appellants argue Txt Live differs from the system in *Facebook* because it uses a numerically-based randomizer to shuffle and select phone numbers, we find this

[2]Other circuits had addressed this issue, and the Third, Seventh, and Eleventh Circuits agreed with Facebook, while the Ninth (the circuit below in *Facebook*), Second, and Sixth Circuits agreed with the approach argued by Duguid. *Compare Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018), *and Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 284 (2d Cir. 2020), *and Allan v. Pa. Higher Educ. Assistance Agency*, 968 F.3d 567, 571, 580 (6th Cir. 2020), *with Glasser v. Hilton Grand Vacations Co.*, 948 F.3d 1301, 1306 (11th Cir. 2020), *and Gadelhak*, 950 F.3d at 468, *and Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 121 (3d Cir. 2018).

unpersuasive. *Facebook* was not concerned with how an automatic texting system may organize and select phone numbers. The Court was instead concerned with Congress's limiting the definition of Autodialer to unique equipment capable of randomly dialing emergency lines and tying up sequentially numbered business lines. *See id.* And this concern reaches a vanishing point with a system that is only designed to text potential customers who have voluntarily given a business their phone numbers.

Appellants argue our interpretation ignores footnote 7 in *Facebook*. Footnote 7 responded to the argument that the Court's interpretation renders the word "store" superfluous because it is difficult to imagine how a random or sequential number generator could store a phone number without first producing it. *See id.* at 1172 n.7. The Court responded:

> "It is no superfluity," however, for Congress to include both functions in the [A]utodialer definition so as to clarify the domain of prohibited devices. For instance, an [A]utodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time. In any event, even if the storing and producing functions often merge, Congress may have "employed a belt and suspenders approach" in writing the statute.

*Id.* (citations omitted). Like other courts, we do not believe the Court's footnote indicates it believed systems that randomly select from non-random phone numbers are Autodialers. *See, e.g., Tehrani v. Joie de Vivre Hosp., LLC*, No. 19-cv-08168, 2021 WL 3886043, at *6–7 (N.D. Cal. Aug. 31, 2021); *Timms v. USAA Fed. Sav. Bank*, No. 3:18-CV-01495, 2021 WL 2354931, at *6–7 (D.S.C. June 9, 2021). The hypothetical system considered by the Court was a system in which numbers were sequentially generated before being stored and later randomly selected. *See* Brief of Amici Curiae Pro. Ass'n for Customer Engagement at 17–19, *Facebook*, 141 S. Ct. 1163. Txt Live does not sequentially generate phone numbers.

Further, the Court struggled with the difficult question of how a number generator could store a phone number without first producing it. The Court explained Congress may have used "store" to "clarify the domain of prohibited devices" rather than specify a distinct category of systems which store but do not produce phone numbers. *Facebook*, 141 S. Ct. at 1172 n.7. The Court was not suggesting, as Appellants argue, that the term "produce" includes randomly selecting from a database of non-randomly collected phone numbers. This would conflict with the Court's overall conclusion that a system which merely stores and dials phone numbers is not an Autodialer.[3] And at its bottom, Txt Live is a system that merely stores and dials phone numbers.

### III. Conclusion

For the reasons set forth herein, we affirm.

COLLOTON, Circuit Judge, concurring in part.

I concur in the opinion of the court, except for footnote three regarding denials of certiorari and summary reconsideration orders. *See Missouri v. Jenkins*, 515 U.S.

---

[3]While "a denial of certiorari normally carries no implication or inference," *United States v. Kras*, 409 U.S. 434, 443 (1973), it does not escape our notice that in the wake of *Facebook,* the Court granted certiorari and remanded cases that held systems that dialed from a group of pre-collected phone numbers were Autodialers, *see La Boom Disco v. Duran*, 141 S. Ct. 2509 (2021); *Pa. Higher Educ. Assistance Agency v. Allan*, 141 S. Ct. 2509 (2021), indicating "a 'reasonable probability' that the [respective] Court[s] of Appeals would reject a legal premise on which [they] relied[.]" *Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001) (quoting *Lawrence v. Chater*, 516 U.S. 163, 167 (1996)). On the same day, the Court denied certiorari to cases that held systems that dialed from a group of pre-collected numbers were not Autodialers. *See Gadelhak v. AT&T Servs., Inc.*, 141 S. Ct. 2552 (2021); *Glasser v. Hilton Grand Vacations Co.*, 141 S. Ct. 2510 (2021).

70, 85 (1995); *Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001*); South Dakota v. U.S. Dep't of Interior*, 423 F.3d 790, 796 n.5 (8th Cir. 2005).

_____