[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10414
_____

D.C. Docket No. 6:12-cv-01459-CEH-KRS

JOSEPH B. MURPHY,
an individual, on behalf of himself
and all others similarly situated,

Plaintiff – Appellant,

versus

DCI BIOLOGICALS ORLANDO, LLC,
a Delaware limited liability company,
DCI BIOLOGICALS, INC.,
a Delaware Foreign For Profit Corporation,
MEDSERV BIOLOGICALS, LLC,
a Delaware Foreign Limited Liability Company,

Defendants – Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 20, 2015)

Before TJOFLAT, and JILL PRYOR, Circuit Judges, and MOODY,[*] District Judge.

JILL PRYOR, Circuit Judge:

Plaintiff-Appellant Joseph Murphy brought this putative class action against Defendants-Appellees DCI Biologicals Orlando, LLC; DCI Biologicals, Inc.; and Medserv Biologicals, LLC (collectively, "DCI"), alleging that DCI violated the Telephone Communications Practice Act, 47 U.S.C. § 227 ("TCPA"), by sending Mr. Murphy two text messages. In this appeal, we examine whether Mr. Murphy gave prior express consent under the TCPA to be contacted. After careful consideration of the briefs, and with the benefit of oral argument, we affirm the district court's opinion.

## I.

DCI buys and resells blood products through plasma collection centers across the United States. Mr. Murphy was paid for multiple blood plasma donations he made at a collection center during the spring of 2010. Before donating, Mr. Murphy filled out medical release and acknowledgement forms, as well as a "New Donor Information Sheet," which asked for information required by federal law and for personal information such as his telephone number. Mr. Murphy alleged that DCI, through public ads and privacy policies, represented that

---

[*] Honorable James S. Moody, Jr., United States District Judge for the Middle District of Florida, sitting by designation.

blood donor information submitted for record maintenance would be kept confidential.

More than two years later, DCI sent Mr. Murphy two text messages. The first read:

> You will receive MMS messages from DCI Biologicals on short code 76000. Reply STOP to 99000 to cancel.

Am. Compl. ¶ 89, Doc. 59. Mr. Murphy did not reply. Approximately 40 minutes later, Mr. Murphy received a second text message:

> We NEED U Back $20 Special!!!
>
> DCI Biologicals: DONATE TODAY! GET PAID TODAY! SAVE A LIFE TODAY! "$20 COME BACK SPECIAL"- Come back in and See Us & Get an Extra $5 on your NEXT 4 Donations!
>
> DONATE UP TO 20 MIN FASTER WITH OUR NEWLY UPGRADED MACHINES . . . .

*Id.*[1] The second text message also had an electronic media file attached, which pictured a woman holding cash with the words:

> DCI Biologicals
>
> PLASMA The Fluid of LIFE
>
> EARN UP TO $235 A MONTH

*Id.* ¶ 90; Am. Compl., Ex. A, Doc. 59-1.

---

[1] The text message also contained practical information such as the plasma center's hours and location and a number to call for questions.

Mr. Murphy alleged that DCI stored donor record information on a commercial database it operated and that it provided the donor information to third party text message marketing/advertising platforms.  Mr. Murphy further alleged that DCI used the third parties' automatic dialing equipment to send out mass automated text advertising messages to donors such as himself.

Mr. Murphy claimed, *inter alia*, that sending the text messages violated the TCPA's prohibition on using an auto dialer device to dial telephone numbers without the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(A). DCI moved to dismiss the lawsuit on the ground that by providing his cell phone number to DCI on the New Donor Information Sheet (as Mr. Murphy alleged in his complaint), he gave prior express consent to be contacted at that number — an affirmative defense to a claim under the TCPA.  In a thorough and thoughtful opinion granting DCI's motion to dismiss, the district court concluded that it lacked jurisdiction under the Hobbs Act to consider Mr. Murphy's argument that the Federal Communications Commission ("FCC") incorrectly interpreted "prior express consent" in its initial rulemaking following the TCPA's passage.  *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992

4

FCC Order"), 7 FCC Rcd. 8752, 8769 (1992).  This appeal, challenging only the dismissal of the auto dialer counts under the TCPA, followed.[2]

## II.

We review the district court's grant of DCI's motion to dismiss for failure to state a claim *de novo*, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.  *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1169 (11th Cir. 2014).  A district court may dismiss a complaint for failure to state a claim if an affirmative defense appears on the face of the complaint.  *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993).

## III.

We begin by reviewing the TCPA's applicable section and the FCC's interpretations of it.  The TCPA prohibits the use of an automatic telephone dialing system to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).[3]  The prohibition against auto dialed calls applies to text message calls as well as voice

---

[2] The district court also dismissed Mr. Murphy's other claims.  Although Mr. Murphy's notice of appeal challenged the district court's order in its entirety, his appellate briefing and argument were limited to the auto dialer counts.  We therefore consider only those counts.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

[3] The TCPA creates a private right of action for enforcement.  47 U.S.C. § 227(b)(3).  A person or entity may seek an injunction or monetary damages based on a violation of 47 U.S.C. § 227(b) or a regulation promulgated by the FCC thereunder.  *Id.* § 227(b)(3)(A)-(C).

calls. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003) (affirming that the prohibition against automatic telephone dialing in § 227(b)(1) "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls"). Congress conferred on the FCC the authority to "prescribe regulations to implement" the TCPA. 47 U.S.C. § 227(b)(2); *see also id.* § 201(b) ("The Commission may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter.").

Pursuant to its rulemaking authority, the FCC defined "prior express consent" in its initial rulemaking following the TCPA's passage. *See* 1992 FCC Order, 7 FCC Rcd. at 8769. The FCC stated that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* at 8769 ¶ 31. It explained that "telemarketers will not violate our rules by calling a number which was provided as one at which the called party wishes to be reached." *Id.* Referencing the House Report on the TCPA as support for this interpretation, the FCC noted that when a person provides his or her telephone number, calls to that number are permissible because "the called party has in essence requested the contact by providing the caller with their telephone number

for use in normal business communications." *Id.* at 8769 ¶ 31 n.57 (quoting H.R. Rep. No. 102-317, at 13 (1991)).

In subsequent explications of TCPA regulations, the FCC has referred with approval to the 1992 FCC Order's interpretation of prior express consent. In 2008, the FCC issued a declaratory judgment that declined to find an exception to the prior express consent doctrine for auto dialed calls to wireless numbers made by debt collectors. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2008 FCC Ruling"), 23 FCC Rcd. 559 (2008). The FCC concluded that providing a cell phone number to a creditor — as part of a credit application, for example — "reasonably evidences prior express consent . . . to be contacted at that number regarding the debt." *Id.* at 564 ¶ 9. Citing the 1992 FCC Order, the FCC repeated its previous interpretation of prior express consent: "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Id.* Although the 2008 FCC Ruling dealt specifically with debt collection calls, the FCC "reiterate[d] that the plain language of [§] 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called

7

party," and that "this prohibition applies regardless of the content of the call." *Id.* at 565 ¶ 11.[4]

### IV.

### A.

Having set forth the statutory and regulatory background, we examine whether the district court correctly held that it lacked jurisdiction under the Hobbs Act to review, and was therefore bound by, the 1992 FCC Order's interpretation of prior express consent. DCI argues that under the 1992 FCC Order Mr. Murphy gave his express consent to be contacted by DCI when he included his cell phone number on the New Donor Information Sheet before giving blood. In response, Mr. Murphy argues that the 1992 FCC Order does not control. According to Mr. Murphy, the term "prior express consent" must be given its ordinary meaning, under which, he argues, providing a cell phone number on the new donor form constituted only implied consent. We hold that the 1992 FCC Order's interpretation of prior express consent controls; thus, Mr. Murphy gave his prior express consent to be contacted by DCI.

---

[4] In 2012, the FCC altered the requisite form of prior express consent for "all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines," specifying that prior consent to be contacted must be "written" and setting forth disclosures that must be made when obtaining prior consent. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2012 FCC Order"), 27 FCC Rcd. 1830, 1831 ¶ 2, 1838 ¶ 20 (2012); *see* 47 C.F.R. § 64.1200(f)(8). This revision did not affect Mr. Murphy because he received the text messages before the 2012 rules were implemented.

The Communications Act, which the TCPA amended, provides that any "proceeding to enjoin, set aside, annul, or suspend any order of the Commission" must be brought under the Hobbs Act.  47 U.S.C. § 402(a).  The Hobbs Act provides the federal courts of appeals with "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity" of FCC orders. 28 U.S.C. § 2342(1).  District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation, because "[d]eeming agency action invalid or ineffective is precisely the sort of review the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders."  *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120-21 (11th Cir. 2014).  If the Hobbs Act applies, a district court must afford FCC final orders deference and may only consider whether the alleged action violates FCC rules or regulations.

FCC orders "'adopted by the Commission in the avowed exercise of its rule-making power' that 'affect or determine rights generally . . . have the force of law and are orders reviewable under the' Hobbs Act."  *Id.*, 768 F.3d at 1121 (quoting *Columbia Broad. Sys. v. United States*, 316 U.S. 407, 417 (1942)).  In our recent decision in *Mais*, we reversed the district court's holding — that the 2008 FCC Ruling's interpretation of prior express consent in the context of debt collection was inconsistent with the TCPA's plain language — on the ground that the holding violated the Hobbs Act's prohibition on district court review of FCC orders.  *Id.* at

9

1119-21. The 2008 FCC Ruling, which reiterated the 1992 FCC Order's interpretation of prior express consent, controlled in *Mais*. After Ms. Mais provided her husband's cell phone number on a hospital admission form, Mr. Mais received calls from the hospital's debt collection agent. We held that the calls did not violate the TCPA because Ms. Mais's provision of her husband's number was "consistent with the meaning of prior express consent announced by the FCC in its 2008 Ruling," *id.* at 1126, and the "FCC did not distinguish or exclude medical creditors from its 2008 Ruling." *Id.* at 1122.

Mr. Murphy asks us to adopt the same interpretation of prior express consent that the district court did in *Mais*, rather than the interpretation promulgated by the FCC. We decline to do so. Acknowledging that the 2008 FCC Ruling's treatment of prior express consent was in line with prior FCC orders, including the 1992 FCC Order, in *Mais* we further noted that the 1992 FCC Order's interpretation of prior express consent was consistent with the TCPA's legislative history. We explained that liability under the TCPA only inures for calls made without the called party's "prior express invitation or permission." *Id.* at 1124. Here, we find no indication that the 1992 FCC Order's definition of prior express consent was limited such that it does not cover Mr. Murphy's situation. The district court rightly refused to consider Mr. Murphy's argument that the 1992 FCC Order's interpretation was inapplicable and contrary to the plain language of the TCPA because the effect

10

would be to "set aside, annul, or suspend" the FCC Order and thus a violation of the Hobbs Act.[5]

### B.

Having determined that the district court correctly refused to entertain arguments regarding the validity of the 1992 FCC Order, we turn to whether DCI's actions violated the TCPA under any FCC order.  Mr. Murphy's argument that prior express consent must be given its plain language meaning fails because it requires rejection of the FCC's interpretation of prior express consent in FCC orders.  Absent a direct appeal to review the 1992 FCC Order's interpretation of prior express consent, we are bound to follow it.  *See CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 450 (7th Cir. 2010); *cf. Mais*, 768 F.3d at 1121 (holding the 2008 FCC Ruling had the force of law).[6]  Mr. Murphy's complaint alleged that he provided his cell phone number on DCI's New Donor Information Sheet, which he completed before giving blood plasma.  Mr. Murphy gave his prior express consent to receive auto dialed calls or text messages, such as the two text messages he received, by providing his cell phone number, which was not

---

[5] The district court's opinion in this case, which was issued before we decided *Mais*, criticized the district court decision in *Mais* as incorrectly holding that the Hobbs Act's jurisdictional provision did not apply.  The district court's analysis in this case is merely strengthened by our reversal in *Mais*.

[6] Mr. Murphy does not contest that the 1992 FCC Order is a final order.  *See CE Design*, 606 F.3d at 448 n.4 (analyzing the 1992 FCC Order where CE Design did not contest that the 1992 FCC Order was "anything other than a final FCC order").

required under federal law for the donation of blood products.  The form neither requested a cell phone number specifically nor indicated that providing a cell phone number was a prerequisite to donating blood plasma.  Under § 227(b)(1)(A) and the FCC's interpretation of prior express consent, Mr. Murphy's provision of his cell phone number constituted his express consent to be contacted by DCI at that number.

We are unpersuaded by Mr. Murphy's argument that the 1992 FCC Order does not apply to the facts of this case because it concerned only residential landlines.  As discussed above, the 1992 FCC Order's interpretation of prior express consent applied to § 227(b)(1)(A) generally.  Cellular telephones are expressly included in § 227(b)(1)(A), and the 1992 FCC Order's discussion of prior express consent gave no indication that cellular telephones should be excluded.  *See* 1992 FCC Order, 7 FCC Rcd. at 8768-69 ¶¶ 29-31.  And, since 1992, the FCC has reiterated and consistently applied its interpretation of prior express consent in the context of cell phone calls and text messages.  *See* 2012 FCC Order, 27 FCC Rcd. at 1832 ¶ 4 (section 227(b)(1)(A), which "prohibits certain categories of autodialed calls, absent an emergency or the 'prior express consent' of the consumer[,] . . . encompasses both voice and text calls, including short message service (SMS) calls."); 2008 FCC Ruling, 23 FCC Rcd. at 564 ¶ 9 ("provi[ding] [] a cell phone number to a creditor, *e.g.*, as part of a credit

12

application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt."). We therefore hold that the 1992 FCC Order's interpretation of prior express consent applies to Mr. Murphy's claims.

## V.

By voluntarily providing his cell phone number to DCI, Mr. Murphy gave his prior express consent to be contacted. Because Mr. Murphy's complaint alleges, on its face, facts that demonstrate prior express consent, we affirm the district court's dismissal of Mr. Murphy's claims.

**AFFIRMED.**