WILLIAM P. DIMITROULEAS, United States District Judge
THIS CAUSE is before the Court on Defendant Ocwen Loan Servicing, LLC ("Ocwen" or "Defendant")'s Motion to Dismiss [DE 16], filed on September 21, 2018. The Court has carefully considered the Motion, Plaintiff Justin Adams ("Adams" or "Plaintiff")'s Response [DE 17], Defendant's Reply [DE 18], and is otherwise fully advised in the premises.
I. BACKGROUND
The parties to this action are Plaintiff Adams and Defendant Ocwen. See Complaint [DE 1-1] at pp. 7-14. According to the allegations of the Complaint, which the Court assumes as true for purposes of this motion to dismiss:
Plaintiff is a Plaintiff is an individual residing in Macomb County, Michigan. Id. ¶ 7. Plaintiff is the owner, regular user and possessor of the cellular telephone number at issue, and was the called party and recipient of Defendant's calls. ¶ 23. Defendant is a business transacting business in the State of Florida with its principal place of business in West Palm Beach, FL. ¶ 8. Defendant began servicing the mortgage on Plaintiff's property in 2011. ¶ 21. Plaintiff specifically revoked consent to receive calls from Defendant on numerous occasions between July 2011 and January 2016. ¶ 26. Nevertheless, between July 2011 and January 2016, Defendant called Plaintiff's cellular telephone more than three-hundred and ten (310) times using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), and/or an artificial or pre-recorded voice (hereinafter, "APV") in an attempt to collect the an alleged debt due from Plaintiff on his residential home loan. ¶¶ 22, 27-30.
Based on this conduct, Plaintiff initiated this action in state court on or about July 19, 2018, bringing a claim for Violations of Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A). Defendant removed the case to federal court on August 2, 2018 and subsequently filed the instant motion seeking dismissal pursuant to Fed. R. Civ. P. 12(b)(6).
II. STANDARD OF REVIEW
To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff *1353 is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). "[A] court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." Am. United Life Ins. Co. v. Martinez , 480 F.3d 1043, 1066 (11th Cir. 2007).
However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." Iqbal , 129 S.Ct. at 1949. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." Franklin v. Curry , 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." Chaparro v. Carnival Corp. , 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." Miyahira v. Vitacost.com, Inc. , 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ).
III. DISCUSSION
First, Defendant asserts that Plaintiff's TCPA claim fails because Plaintiff has not sufficiently alleged the use of an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. Second, Defendant asserts that Plaintiff's TCPA claim fails because debt collection calls are not covered by the TCPA. The Court will consider each argument in turn.
The TCPA prohibits anyone from using an automated telephone dialing system to call a cell phone number without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A)(iii) ; see also Murphy v. DCI Biologicals Orlando, LLC , 797 F.3d 1302, 1305 (11th Cir. 2015). The relevant provision of the TCPA provides as follows:
It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... [t]o make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.
47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private right of action for any violation of this provision and permits the recovery of the greater of $ 500 or actual losses, with the potential for treble damages if a court determines that the violation was willful. § 227(b)(3). The TCPA explicitly exempts from its purview a "call [ ] made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).
Accordingly, to state a claim for violation of the TCPA, a plaintiff must provide sufficient support of the following elements: "(1) a call was made to a cell or wireless phone, (2) by the use of an automatic dialing system or an artificial or prerecorded voice, and (3) without prior *1354 express consent of the called party." Witchard v. Allied Interstate, LLC , 2015 WL 6817163, at *2 (M.D. Fla. Nov. 6, 2015) (emphasis added).
The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity-(A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In 2003, the FCC explained that the TCPA includes equipment that has "the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 WL 21517853, 18 F.C.C.R. 14014 ¶ 131 (Fed. Commc'n Cmm'n July 3, 2003). This is because the basic function of such equipment is "the capacity to dial numbers without human intervention." Id. ¶ 132. The FCC affirmed this definition of an ATDS in 2008. In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2008 WL 65485, 23 F.C.C.R. 559 ¶ 12 (Fed. Commc'n Cmm'n Jan. 4, 2008).
Prior to the FCC's 2015 Order that has been since vacated, see ACA International v. Federal Communications Commission , 885 F.3d 687, 691 (D.C. Cir. 2018) (" ACA "), many courts had followed the FCC's 2003 and 2008 interpretation that automated dialing systems that automatically dial cell phone numbers from a preprogrammed list are "automatic telephone dialing systems" under the TCPA. See Bianchi v. Bronson & Migliaccio, LLP , Case 0:09-cv-61164-UU, 2010 WL 11505439, May 27, 2010, D.E. 59 at 5 ("The undisputed evidence in this case shows that LiveVox is a fully-automated dialing service, which calls debtors without any human intervention[.]"); Meyer v. Portfolio Recovery Assocs., LLC , 707 F.3d 1036, 1043 (9th Cir. 2012) ; Swope v. Credit Mgmt., LP , Case No. 12CV832, 2013 WL 607830, at *4 (E.D. Mo. Feb. 19, 2013) (The FCC has twice "held that predictive dialers are considered automatic telephone dialing systems subject to the TCPA, and that debt collectors are not exempt from the statute's prohibitions."); Vance v. Bureau of Collection Recovery, LLC, No. 10-cv-06324, 2011 WL 881550, at *2 (N.D. Ill. Mar. 11, 2011) ("[T]he FCC has indicated, and other courts have held, that predictive dialing systems do meet the definition of devices prohibited by the TCPA."); see also Ortega v. Collectors Training Inst. of Ill. , No. 09-21744-CIV, 2011 WL 241948, at *8 (S.D. Fla. Jan. 24, 2011) (denying summary judgment because there was evidence that defendants used an "auto dialer system" and because Plaintiff heard a "robot voice" on the message).
However, as Defendant argues, the FCC's 2003 and 2008 Orders' interpretation of the statutory meaning of an ATDS were voided and vacated by the D.C. Circuit's recent decision in ACA , which struck down the FCC's 2015 Order interpreting what devices should be considered ATDSs under the TCPA. See, e.g. , Gonzalez v. Ocwen Loan Servicing, LLC, No. 5:18-CV-340-OC-30PRL, 2018 WL 4217065, at *6 (M.D. Fla. Sept. 5, 2018) ("[T]he D.C. Circuit necessarily vacated the definition in the prior FCC Orders that the 2015 Order merely reaffirmed."). The Court agrees with Defendant that, pursuant to ACA , the FCC's prior orders regarding its interpretation of automatic and predictive dialers under the TCPA are not binding. See Marks v. Crunch San Diego, LLC , 904 F.3d 1041 (9th Cir. 2018) ("Because the D.C. Circuit vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains.");
*1355 King v. Time Warner Cable Inc. , 894 F.3d 473, 476-77 (2d Cir. 2018) (holding that ACA International "invalidated that [FCC 2015 Declaratory Ruling] and thereby removed any deference we might owe to the views the FCC expressed in it"); Dominguez ex rel. Himself v. Yahoo, Inc. , 894 F.3d 116, 119 (3d Cir. 2018) (holding that in light ACA , the court was free to interpret the statutory definition of an autodialer as it had prior to the FCC's 2015 order).
Nonetheless, upon careful consideration, the Court disagrees with Defendant about what devices do constitute an ATDS under the statutory definition, and finds Defendant's proposed interpretation overly restrictive
"[A]n ATDS is a device which has the capacity to (1) store or produce telephone numbers to be called, using a random or sequential number generator; and (2) dial such numbers." See § 227(a)(1). Upon the Court's independent review of the relevant case law, the Court agrees with the reasoning and conclusions of post- ACA decisions which hold that "the statutory definition of ATDS includes a device that stores telephone numbers to be called, whether or not those numbers have been generated by a random or sequential number generator." Marks v. Crunch San Diego, LLC , 904 F.3d 1041, 1043 (9th Cir. 2018). In Marks , the Ninth Circuit "decline[d] to follow the Third Circuit's unreasoned assumption [in Dominguez ] that a device must be able to generate random or sequential numbers in order to qualify as an ATDS." 904 F.3d 1041, at * 9, n. 8. The Marks panel explained its conclusion regarding the statutory definition of the ATDS as follows:
Despite the ambiguity of the statutory definition of ATDS, reading the definition "in [its] context and with a view to [its] place in the overall statutory scheme," Brown & Williamson Tobacco Corp. , 529 U.S. at 133, 120 S.Ct. 1291, we conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a "random or sequential number generator," but also includes devices with the capacity to dial stored numbers automatically. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity-(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator-and to dial such numbers.
Marks , 904 F.3d 1041, at *9. See Heard v. Nationstar Mortg. LLC , No. 2:16-CV-00694-MHH, 2018 WL 4028116, at *6 (N.D. Ala. Aug. 23, 2018) ("An entity attempting to collect a debt will not generate phone numbers randomly or sequentially without regard to whether the person being called owes the company money. In that regard, an entity like Nationstar will always make its collection calls with reference to a relatively narrow, predetermined list of telephone numbers. But this fact does not prevent the TCPA from applying to Nationstar's predictive collection calls. Again, Nationstar's proposed interpretation of the TCPA is too restrictive."). See also Ramos v. Hopele of Fort Lauderdale, LLC , 334 F.Supp.3d 1262, 1265-66 (S.D. Fla. 2018) (reasoning that whether or not a device is an ATDS depends on how much human-directed actions are required by the system, ruling at summary judgment that "the undisputed facts establish that the EZ-Texting system could not send the text messages at issue without a significant amount of human involvement" and therefore was not an automatic dialer under the TCPA).
To sufficiently plead the ATDS element of a TCPA claim, a plaintiff may not merely recite the statutory elements of *1356 the use of an ATDS or prerecorded voice without alleging additional facts to support those facts. See Johansen v. Vivant, Inc. , 2012 WL 6590551, *3 (N.D. Ill. Dec. 18, 2012) ("Use of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts. Still, when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details."). Here, upon consideration, the Court concludes that Plaintiff's Complaint includes sufficient allegations that support his claim that the calls were autodialed and/or prerecorded. Plaintiff alleges that Defendant made upwards of 310 calls to Plaintiff's cellular telephone. ¶ 30. Plaintiff also alleges that Defendant ignored Plaintiff's numerous demands that Defendant cease calling, which also suggests that Defendant was autodialing Plaintiff. ¶ 26. Accordingly, Defendant's motion to dismiss the TCPA claim for failure to allege the use of an ATDS shall be denied. Defendant may raise the issue of whether an ATDS was used at summary judgment, after the opportunity to conduct discovery.
Second, Defendant asserts that Plaintiff's TCPA claim fails because debt collection calls are not covered by the TCPA. The Court rejects this argument. As explained by a recent district court opinion where Defendant Ocwen argued this precise issue:
While the Court agrees with Ocwen that the 2003 and 2008 Orders were vacated to the extent that the Court cannot apply the definitions of capacity or ATDS contained in those Orders, the Court disagrees with Ocwen's argument that other portions of those orders are also invalid. That is the premise of Ocwen's first argument why Gonzalez's TCPA claim should be dismissed: the TCPA does not apply to it because the 2003 Order which first applied the TCPA to debt collection calls is now invalid. But just because one aspect of an FCC order is vacated does not mean that the entire order has been vacated. As proof, this Court need look no further than ACA Int'l, in which the D.C. Circuit vacated two portions of the FCC's 2015 Order but upheld two other portions. 885 F.3d at 691-92. Ocwen has provided no authority for this Court to throw out the entirety of the 2003 Order-including the portion determining that the TCPA applies to debt collectors-as opposed to excising only the offending portion of the 2003 Order that the D.C. Circuit held is invalid. Instead, the Court concludes it is bound under the Hobbs Act to apply the FCC's rule that the TCPA does apply to calls made by debt collectors. Murphy v. DCI Biologicals Orlando, LLC , 797 F.3d 1302, 1306-07 (11th Cir. 2015).
Gonzalez v. Ocwen Loan Servicing, LLC , No. 5:18-CV-340-OC-30PRL, 2018 WL 4217065, at *5, n.7 (M.D. Fla. Sept. 5, 2018), reconsideration denied (Oct. 18, 2018). Accordingly, Defendant's motion to dismiss the TCPA claim because the calls were for debt collection shall be denied.
IV. CONCLUSION
For the foregoing reasons, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss [DE 16] is DENIED . Defendant shall file an answer within fourteen (14) days of the date of this Order.
DONE and ORDERED in Chambers, at Ft. Lauderdale, Broward County, Florida, this 26th day of October, 2018.