[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11755

Non-Argument Calendar

_____

RICKY GIDDENS,

Plaintiff-Appellant,

*versus*

BROOKS COUNTY, GEORGIA,

BROOKS COUNTY BOARD OF COMMISSIONERS,

SHERIFF MIKE DEWEY,

OFFICER FRYE,

TERRY GRIFFIN, et al.,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:19-cv-00140-LAG

————————————

Before JILL PRYOR, BRANCH, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Ricky Giddens, a non-prisoner proceeding *pro se*,[1] appeals the district court's dismissal of Plaintiff's civil action against two officers with the Sheriff's Department in Brooks County, Georgia.[2] In his amended complaint, Plaintiff asserted against Officers Frye and Brown claims for violations of the Fourth Amendment and Georgia law. Reversible error has been shown; we affirm in part and vacate in part the order of dismissal, and remand for further proceedings.

---

[1] We read liberally briefs filed by *pro se* litigants. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

[2] Plaintiff also named as defendants Brooks County, Georgia, the Brooks County Board of Commissioners, Sheriff Mike Dewey, and Captain Terry Griffin. Plaintiff raises no challenge to the district court's *sua sponte* dismissal of these defendants. Plaintiff's claims against these defendants are thus not before us on appeal.

## I.

In August 2019, Plaintiff filed *pro se* this civil action in the district court.  Plaintiff also moved for leave to proceed *in forma pauperis* ("IFP") under 28 U.S.C. § 1915.  The district court granted Plaintiff's IFP motion upon review of Plaintiff's financial situation.  The district court then looked at the complaint under section 1915(e)(2) and dismissed Plaintiff's complaint for failure to state a claim.

In October 2019, Plaintiff filed an amended complaint: the operative complaint in this appeal.  Plaintiff's claims arise from a traffic stop that occurred around midnight on 18 March 2019.  Construed liberally, Plaintiff's amended complaint alleges these facts.  As Plaintiff was driving home "on a lonely highway," Plaintiff drove past Officer Frye, who was traveling in the opposite direction.  Shortly after the cars passed each other, Officer Frye made a U-turn, activated his blue lights, and followed Plaintiff "with a high rate of speed."  Officer Frye stopped Plaintiff's vehicle in front of Plaintiff's driveway.

Officer Frye asked Plaintiff "in a hostile manner" for Plaintiff's license and registration.  Plaintiff asked why he had been stopped.  Officer Frye first told Plaintiff that Plaintiff's tag light was broken but then conceded that Plaintiff's tag light was in fact then working.  Plaintiff accused Officer Frye of lying, and the two men argued "back and forth" about the tag light and about Officer Frye's real reason for stopping Plaintiff.

During this exchange, Officer Frye said that Plaintiff had also been speeding. Plaintiff responded, "You can't be serious man." Plaintiff then argued with Officer Frye about whether Plaintiff had been speeding and about why Officer Frye had failed initially to mention a speeding violation. At some point, Officer Frye took Plaintiff's license and registration and returned to his patrol vehicle, which was a K-9 Unit: a police dog was present.

Between ten and fifteen minutes later, Officer Brown arrived at the scene. Officer Frye then walked his dog around the outside of Plaintiff's car. Officer Frye told Plaintiff that the dog had alerted to possible contraband and instructed Plaintiff to step out of his car.

After Plaintiff exited his car, both Officers Frye and Brown conducted a pat-down search of Plaintiff's person. Officer Frye then searched Plaintiff's car and found no contraband. During the search process, Plaintiff continued to assert that his tag light was in fact working, accused Officer Frye of fabricating a traffic stop, and advised the officers that he intended to file a complaint.

Officer Frye issued Plaintiff two traffic tickets: one for a tag-light violation and one for speeding. The tag-light violation was later dismissed.

Plaintiff's amended complaint lists twelve counts against defendants for violations of the Fourth Amendment and Georgia law, including unreasonable search and seizure, unlawful detention, false imprisonment, and failure to intervene.

The district court construed Plaintiff's amended complaint as a motion for leave to amend: a motion that the district court granted in part and denied in part. The district court concluded that Plaintiff had alleged sufficient facts to show that Officer Frye lacked probable cause and reasonable suspicion to stop Plaintiff's vehicle. As a result -- for purposes of section 1915(e)(2) -- the district court concluded that Plaintiff had stated sufficiently against Officer Frye claims for unreasonable search and seizure and for unlawful detention under the Fourth Amendment and for false imprisonment under Georgia law. The district court ordered that service be made on Officer Frye.

About Plaintiff's remaining claims, the district court said Plaintiff asserted only legal conclusions or recited the elements of the causes of action. The district court thus determined that Plaintiff had failed to allege facts sufficient to state a claim for relief against the remaining defendants and dismissed without prejudice those claims.

On 19 May 2020, Plaintiff filed a USM 285 form directing the United States Marshals Service ("USMS") to serve Officer Frye at the address for the Brooks County Sheriff's Department in Quitman, Georgia. The form identified Officer Frye's badge number, but not his first name. The USMS mailed a process receipt and return to Officer Frye at the address provided by Plaintiff. The forms were later returned as unexecuted with a note that Officer Frye no longer worked at the Sheriff's Department.

On 28 September 2020, Plaintiff moved for an extension of time to complete service of process and moved for an order authorizing the USMS to serve Officer Frye.  In his motion, Plaintiff provided Officer Frye's full name but said he had been unable to locate Officer Frye's current address through social media or public records.  Plaintiff asserted that he should not be penalized for failure to effect service when service was provided to Officer Frye's last known address.

On 29 October 2020, the district court granted Plaintiff a 45-day extension to complete service.  The district court, however, declined to direct service on Officer Frye, explaining that the USMS could not serve Officer Frye until Plaintiff provided a proper address.  The district court ordered Plaintiff to complete a new USM 285 form that included an address where Officer Frye could be served.  The district court warned that failure to provide a valid address could result in dismissal of Plaintiff's case.  Plaintiff later filed a new USM 285 form which again listed Officer Frye's address as the Sheriff's Department in Quitman, Georgia.

On 20 April 2021, the district court dismissed without prejudice Plaintiff's civil action for failure to effect service of process. The district court explained that the time to perfect service had expired and that Plaintiff had failed to provide a valid address for Officer Frye.  The district court found no good cause existed for the untimely service and, thus, that dismissal was required under Fed. R. Civ. P. 4(m).

## II.

### A.

We first address Plaintiff's challenge to the district court's dismissal of his claims against Officer Brown. We review *de novo* a district court's *sua sponte* dismissal -- pursuant to section 1915(e)(2)(B)(ii) -- for failure to state a claim, and we view the factual allegations in the complaint as true. *See Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017).

A court "shall dismiss" a case filed *in forma pauperis* if the court determines, among other things, that the complaint "is frivolous or malicious" or "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). The district court dismissed as frivolous Plaintiff's claims against Officer Brown because Plaintiff failed "to state a claim for which relief can be granted." In reviewing a dismissal for failure to state a claim under section 1915(e)(2)(B)(ii), we apply the same standard that applies to dismissals under Fed. R. Civ. P. 12(b)(6). *See Evans*, 850 F.3d at 1253.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A district court may dismiss a complaint for failure to state a claim if an affirmative defense appears on the face of the complaint." *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015).

A complaint filed by a *pro se* litigant is construed more liberally than a formal pleading drafted by a lawyer. *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Despite this leniency toward *pro se* litigants, however, courts may not step into the role of *de facto* counsel or "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998).

The district court committed no error in dismissing -- for failure to state a claim -- Plaintiff's claims against Officer Brown. Construed liberally, Plaintiff's complaint purports to assert against Officer Brown claims for conspiracy to violate Plaintiff's Fourth Amendment rights, failure to intervene, and for an unconstitutional pat-down search. About Plaintiff's conspiracy claims, Plaintiff alleged no facts supporting his conclusory allegations that Officer Brown conspired with Officer Frye (1) to conduct an unlawful pretextual traffic stop unsupported by reasonable suspicion; (2) to prolong unlawfully the duration of the traffic stop by conducting a dog sniff; and (3) to deprive Plaintiff of his right to be free from unreasonable searches and seizures. These conclusory allegations

are insufficient to state a claim for relief and merit no further discussion. *See Iqbal*, 556 U.S. at 678.

### 1.    *Failure to Intervene*

Plaintiff contends that Officer Brown failed to intervene in the purportedly unlawful traffic stop and dog sniff: violations Plaintiff says Officer Brown could have prevented by informing Officer Frye that Plaintiff's tag lights were operational.

We have recognized a cause of action for failure-to-intervene in cases involving claims of excessive force and false arrest. We have said that "[a]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be liable for failing to intervene, so long as he was in a position to intervene yet failed to do so." *See Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir. 2020) (quotations omitted). We have also determined that a non-arresting officer may be liable for failing to intervene in an unlawful arrest "if he knew the arrest lacked any constitutional basis and yet participated in some way." *See Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013).

Even assuming (without deciding) that our failure-to-intervene precedent would extend to an unlawful traffic stop, Plaintiff has failed to allege facts sufficient to show that Officer Brown would be liable for failing to intervene under the circumstances of

this case.[3]  By the time Officer Brown arrived, Plaintiff had already been stopped for more than 10 or 15 minutes.  Plaintiff has alleged no facts from which we can infer plausibly that Officer Brown participated in -- or was in a position to intervene in -- Officer Frye's decision to initiate the traffic stop.

Nor can we infer that Officer Brown was on sufficient notice that the ongoing traffic stop was unlawful.  Although Plaintiff's tag lights were working when Officer Brown arrived, Plaintiff never alleged that Officer Brown knew or had reason to know that Officer Frye's second stated reason for pulling Plaintiff over (speeding) was untrue.  *See Wilkerson*, 736 F.3d at 980 (concluding an officer was not liable for failing to intervene in a false arrest when the officer arrived after plaintiff was under arrest, relied reasonably upon the arresting officer's account of events, and when plaintiff voiced no challenge to a basis of her arrest).

Plaintiff also alleged no facts showing that Officer Brown had "the requisite information to put him on notice" that the duration of the traffic stop had been or was being unduly prolonged.  *See id.*  Plaintiff never alleged that Officer Brown knew when Plaintiff was stopped.  Nor has Plaintiff alleged facts from which we might infer that Officer Brown knew -- when Officer Frye

---

[3] In dismissing Plaintiff's claims against Officer Brown, the district court did not rely upon the potential affirmative defense of qualified immunity.  For purposes of this appeal, we do not either.  But we do not rule out that qualified immunity might play a legitimate role in this case if the case were to be litigated further.

conducted the dog sniff -- that the "ordinary inquiries incident" to the traffic stop had already been completed. *See Rodriguez v. United States*, 575 U.S. 348, 355 (2015) ("Ordinary inquiries incident to" a traffic stop often include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance."). A dog sniff is permissible under the Fourth Amendment as long as it is conducted within "the time reasonably required to complete the mission of issuing a ticket for the [traffic] violation." *See id.* at 350 (quotation and alteration omitted); *Illinois v. Caballes*, 543 U.S. 405, 407-08 (2005) (concluding that a dog sniff conducted during an otherwise lawful traffic stop constituted no Fourth Amendment violation when the "duration of the stop . . . was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop"). Because a dog sniff does not inherently and unlawfully prolong a traffic stop, just seeing the dog sniff in this case would not have been sufficient to put Officer Brown on notice that the duration of the traffic stop was at the time unlawful. By the way, the complaint never alleges the total duration of the stop and the complaint never alleges how long Officer Brown was on the scene altogether.

## 2.    *Pat-Down Search*

We evaluate the reasonableness of a search under an objective standard, assessing whether the facts known to the officers at

the time of the search would cause a reasonable officer under the circumstances to believe that the search was constitutional. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

An officer may conduct a pat-down search of a driver or a passenger during a lawful traffic stop when the officer "harbor[s] reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009). Reasonable suspicion does exist when "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *See Terry*, 392 U.S. at 27. "To determine whether suspicion was reasonable, we evaluate the totality of the circumstances surrounding the stop, including the collective knowledge of all officers involved in the stop." *United States v. Bishop*, 940 F.3d 1242, 1249 (11th Cir. 2019) (concluding that reasonable suspicion existed to conduct a pat-down search of a passenger based upon the collective knowledge of the officers involved in the traffic stop). We have concluded that reasonable suspicion exists to support a pat-down search of a driver during a traffic stop when (1) officers smelled marijuana and alcohol coming from the car and (2) "the driver argued with [the officer] at the initiation of the stop." *See United States v. Knight*, 562 F.3d 1314, 1327 (11th Cir. 2009) (involving a traffic stop for failure to wear a seatbelt).

In this case, Plaintiff alleges that he was stopped on a not-well-traveled road around midnight in front of Plaintiff's home. From the moment Officer Frye first approached Plaintiff's car,

Plaintiff was argumentative with Officer Frye, including accusing Officer Frye of lying.  Officer Frye's dog later alerted to the presence of possible contraband inside Plaintiff's car, at which point Officer Frye ordered Plaintiff to exit the car and both officers are said to have conducted a pat-down search.

The circumstances within the collective knowledge of the officers -- Plaintiff's immediate argumentativeness, the officers' detection of the odor of possible contraband emanating from Plaintiff's car, that the traffic stop occurred at night in an isolated location, and that Plaintiff was on his home ground -- are objectively dangerous circumstances the totality of which would give rise to reasonable suspicion that Plaintiff might be armed and dangerous. Under these circumstances, an officer in Officer Brown's place could have believed reasonably that his safety or that of others was in danger and that a pat-down search was warranted.  Given the facts alleged in Plaintiff's complaint (and guided by our decision in *Knight*), we cannot draw a reasonable inference that the pat-down search in this case violated a constitutional right.  Plaintiff's claim was thus dismissed properly for failure to state a claim.

We affirm the district court's dismissal -- under section 1915(e)(2)(B)(ii) -- of Plaintiff's claims against Officer Brown.

B.

Plaintiff next challenges the district court's dismissal of his claims against Officer Frye for failure to effect service of process.

We review for abuse of discretion a district court's *sua sponte* dismissal under Fed. R. Civ. P. 4(m) for failure to effect service. *See Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009). Under this standard, we will "affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.*

Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff shows good cause for failing to effect timely service, the district court must extend the time for service. *Id.* "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007) (quotations and alteration omitted).

When a plaintiff is proceeding IFP under section 1915, the district court must order the USMS to effectuate service upon defendants, provided that the plaintiff has made reasonable efforts to identify the defendants to be served. *Rance*, 583 F.3d at 1286. A failure by the USMS to effect proper service on behalf of a plaintiff proceeding IFP and "through no fault of that plaintiff" constitutes "good cause" under Rule 4(m). *Id.* at 1288.

Even absent a showing of good cause, the district court maintains discretion under Rule 4(m) to extend the time for service. *Lepone-Dempsey*, 476 F.3d at 1282. And we have said that,

21-11755                Opinion of the Court                15

when a district court finds a plaintiff has demonstrated no good cause under Rule 4(m), "the district court must still consider whether any other circumstances warrant an extension of time based on the facts of the case." *Id.* "Only after considering whether any such factors exist may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." *Id.*; *see Bilal v. Geo Care, LLC*, 981 F.3d 903, 919 (11th Cir. 2020) ("[A] district court's dismissal of a case under Rule 4(m) after finding that the plaintiff did not demonstrate good cause but before considering whether the facts of the case justify a permissive extension of the service period is 'premature.'"). Circumstances that might warrant an extension of time include when the statute of limitations would prevent refiling or when the defendant evades service. *Lepone-Dempsey*, 476 F.3d at 1282.

The district court properly exercised discretion in finding no "good cause" for an additional extension of time to serve Officer Frye. The district court had already granted Plaintiff a 45-day extension and advised Plaintiff that the USMS could not execute service until Plaintiff provided a valid address for Officer Frye. Instead of providing a current address (or moving for another extension), Plaintiff merely filed a second USM 285 form with the same outdated address for Officer Frye.

We have said -- in the different context of prisoner litigants proceeding *pro se* and IFP -- that such plaintiffs need not "provide the current addresses of prison-guard defendants who no longer

work at the prison." *See Richardson v. Johnson*, 598 F.3d 734, 739-40 (11th Cir. 2010) (noting the security concerns inherent in providing prisoners access to prison guards' home addresses, the likelihood that the USMS already has access to federal prison guards' contact information, and the logistical hurdles often encountered by prisoner-litigants). In those cases, "as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes." *Id.* at 740.

On appeal, Plaintiff contends -- in reliance on our decision in *Richardson* -- that he provided adequate information for the USMS to locate and to serve Officer Frye. We have not, however, extended the rule announced in *Richardson* to cases like this one in which a non-prisoner litigant is suing a non-prison guard. Given the existing law and under the circumstances of this case, we cannot conclude that the district court abused its discretion in finding no "good cause" existed to excuse Plaintiff's failure to effect timely service.

The district court, however, did err in failing to show that it considered whether other circumstances might exist that would warrant a permissive extension of time to serve Officer Frye. Of particular concern, we note that -- when the district court issued its dismissal order on 20 April 2021 -- the record made obvious that the applicable statutes of limitation for Plaintiff's claims had already

run.[4] Although the district court is not required to grant an extension even if it concludes that Plaintiff is now barred from refiling his claims, "it was incumbent upon the district court to at least consider this factor." *See Lepone-Dempsey*, 476 F.3d at 1282 (reversing the district court's dismissal for failure to effect timely service when the district court failed to consider that the statute of limitations had already expired).

We vacate the district court's 20 April 2021 order of dismissal and remand for the district court to consider explicitly whether other circumstances (including the running of the applicable statutes of limitation) would warrant a permissive extension of time to serve Officer Frye.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

[4] Plaintiff's federal and state-law claims against Officer Frye are subject to a two-year statute of limitations. *See* O.C.G.A. § 9-3-33 (providing a two-year limitations period for personal-injury actions); *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996) (stating that 42 U.S.C. § 1983 actions are governed by the pertinent state's limitation period for personal-injury actions); *Reese v. Clayton Cty.*, 185 Ga. App. 207, 208 (Ga. Ct. App. 1987) (claims for false imprisonment must be brought within two years, pursuant to O.C.G.A. § 9-3-33). Plaintiff's claims accrued -- and the limitations period began to run -- when the alleged unlawful traffic stop occurred on or about 18 March 2019. The limitations period thus expired on or about 18 March 2021: a month before the district court's 20 April 2021 order of dismissal.