[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15473
_____

D.C. Docket No. 3:17-cr-00085-RV-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL RAY BISHOP,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 11, 2019)

Before WILSON and NEWSOM, Circuit Judges, and COOGLER,[*] District Judge.

WILSON, Circuit Judge:

---

[*] Honorable L. Scott Coogler, District Judge for the United States District Court for the Northern District of Alabama, sitting by designation.

Michael Bishop appeals his conviction and sentence following his conditional guilty plea to knowingly possessing a firearm as a convicted felon under 18 U.S.C. §§ 922(g)(1), 924(a)(2).  Bishop argues the district court erred in (1) denying his motion to suppress evidence seized during a pat-down search following a lawful traffic stop; (2) applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B); and (3) applying an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3).  After careful review, we reverse the district court's application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) and remand for further proceedings consistent with this opinion.  We affirm, however, both the denial of Bishop's motion to suppress and the application of an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3).

## I.    Factual and Procedural Background

### A.  Suppression Hearing

Following a lawful traffic stop, police conducted a pat-down search of Bishop's outer clothing and seized a high-capacity gun magazine, the matching firearm, one hydromorphone pill, and three syringes.  Bishop moved to suppress all evidence seized during the search.  He argued that police (1) unlawfully extended the length of the traffic stop, and (2) lacked reasonable suspicion that he was armed and dangerous to justify the pat-down.

2

At the suppression hearing, Santa Rosa County Deputy Sheriff Chad Floyd testified about the events leading up to the search. Floyd was in a marked patrol car and observed a pickup truck drive through a stop sign while exiting an apartment complex. Floyd began following the truck and saw it drive through another stop sign. Floyd pulled the truck over and approached the vehicle. He observed Antonio Davis in the driver's seat and Bishop in the passenger's seat.

Earlier that day, Floyd pulled over a woman that he subsequently arrested for possessing heroin and drug paraphernalia. The woman told Floyd that "she was headed to Michael Bishop's house." Floyd testified that because of the woman's statement, and because Davis "was a known narcotics violator in [Floyd's] agency," he called for a K-9 officer to come to the scene.

Deputy Danny Miller—a K-9 handler—and Deputy Richard Dunsford arrived at the scene to assist Floyd. Dunsford had worked as a corrections officer at the county jail and recognized both Davis and Bishop as former inmates.

Dunsford approached the driver's side of the truck and asked Davis to exit the vehicle. Davis complied without issue. As Dunsford was performing a pat-down search of Davis, Bishop—still seated in the truck—told Dunsford, "you have no right to stop us, you have no right to ask us to get out of the vehicle." Dunsford testified that Bishop was agitated, "fidgeting around," "moving around in the seat," and "very defensive." Dunsford then asked Bishop to exit the truck, and Bishop

3

adamantly refused, saying "[n]o, . . . I'm not getting out of the vehicle, you have no right to ask me to get out of the vehicle." Based on Bishop's general behavior and reluctance to exit the truck, Dunsford became concerned that Bishop "might be hiding a firearm or a weapon or . . . something on his person." After multiple requests to exit the truck, Bishop complied.

Dunsford testified that, for his safety and the safety of his fellow officers, he performed a pat-down search of Bishop's outer clothing. Dunsford felt a firearm magazine in Bishop's left pocket, which he removed. The matching firearm was in Bishop's left pant leg, which Dunsford also removed. The firearm was a stolen semi-automatic handgun with a high-capacity magazine. Deputy Miller then deployed his K-9 to search the truck. After the K-9 gave a positive alert, the deputies searched the truck and recovered a marijuana cigarette, a zip-sealed bag containing empty baggies, and a digital scale.

At the suppression hearing, Bishop argued that Dunsford lacked any reasonable, articulable suspicion that he was armed and dangerous to justify the pat-down search. The district court denied Bishop's motion to suppress because there was "overwhelming" evidence that the pat-down search was supported by reasonable suspicion. The court concluded that the deputies' knowledge of Bishop's prior criminal record, coupled with his nervousness and efforts to obstruct the officers' investigation, provided "ample . . . articulable suspicion" to

4

justify the pat-down.  Bishop pleaded guilty to knowingly possessing a firearm and ammunition as a convicted felon under 18 U.S.C. §§ 924(g)(1), 924(a)(2).[1]

## B.  Sentencing

The United States Probation Office prepared a presentence investigation report (PSI).  In addition to the facts offered at the suppression hearing, the PSI stated that after the deputies recovered the firearm from Bishop's pants, Bishop informed the deputies that he had syringes in his right pocket.  The deputies removed three syringes and a clear plastic bag containing one pill, which was later identified as hydromorphone.[2]

The PSI assigned Bishop an enhanced base offense level of 22 under U.S.S.G. § 2K2.1(a)(3) because (1) the instant offense involved a semi-automatic firearm capable of accepting large capacity magazines and (2) Bishop had previously been convicted in 2013 of a Florida controlled substance offense.[3]

A two-level enhancement applied under U.S.S.G. § 2K2.1(b)(4)(A) because the firearm was stolen.  An additional four-level enhancement applied under U.S.S.G. § 2K2.1(b)(6)(B) because Bishop possessed the firearm in connection with another felony offense—namely, possession of one hydromorphone pill and

---

[1] Pursuant to Federal Rule of Criminal Procedure 11(a)(2), Bishop reserved his right to appeal the denial of his motion to suppress.

[2] Hydromorphone is a Schedule II controlled substance.

[3] The PSI identified Bishop's prior Florida conviction for conspiring to sell, manufacture, deliver, or possess with intent to sell, manufacture, or deliver a controlled substance, Fla. Stat. § 893.13(1)(a), as a predicate controlled substance offense.

three syringes.  Bishop's offense level was reduced by two levels under U.S.S.G. § 3E1.1(a) for acceptance of responsibility.  An additional one-level decrease applied under U.S.S.G. § 3E1.1(b) for assisting authorities in the investigation and prosecution of Bishop's own misconduct by timely notifying authorities of his intention to plead guilty.  Bishop's resulting offense level was 25, and he was assigned a criminal history category of III.  His guideline range was 70 to 87 months' imprisonment.

Bishop objected to his enhanced base offense level under U.S.S.G. § 2K2.1(a)(3), arguing that his prior 2013 Florida conviction for drug conspiracy cannot be a "controlled substance offense" under the Guidelines because Florida does not require knowledge that a substance was a controlled substance.  Bishop also objected to the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense.  He argued that he merely possessed the hydromorphone pill and syringes for personal use while also possessing the firearm.  The enhancement was thus not warranted because the other felony offense was not a drug trafficking crime, but a simple possession offense.

The district court overruled Bishop's objections, adopted the facts and guideline calculations in the PSI, and sentenced Bishop to 80 months.  Bishop timely appealed.

## II.    Discussion

Bishop raises three challenges on appeal.  First, Bishop challenges the district court's denial of his motion to suppress evidence seized during the pat-down search.  He argues that the pat-down search was not warranted because the deputies lacked reasonable suspicion to believe that he was armed and dangerous.  Second, Bishop asserts that the district court erred in applying a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense.  He argues that the possession of one hydromorphone pill and three syringes was a Florida felony drug possession offense, not a drug trafficking crime, and thus, the district court erred in applying the enhancement without making the required finding that the firearm facilitated, or had the potential to facilitate, the drug possession offense.  And third, Bishop asserts that the district court erred in enhancing his base offense level under U.S.S.G. § 2K2.1(a)(3) because his prior Florida conviction for drug conspiracy is not a predicate "controlled substance offense" under the Guidelines.

### A.  Motion to Suppress Evidence

In reviewing a denial of a motion to suppress, we review the district court's findings of fact for clear error and its application of the law de novo.  *United States v. Campbell*, 912 F.3d 1340, 1349 (11th Cir. 2019).

7

The Fourth Amendment guarantees the right against unreasonable searches and seizures.  U.S. Const. amend. IV.  In appropriate circumstances, "police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  An officer may then frisk a legally detained individual for weapons if he reasonably believes that his or others' safety is threatened.  *Terry*, 392 U.S. at 27.

"[I]n a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation," and the "police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity."  *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).  Once a vehicle is lawfully stopped, an officer may order the occupants to exit the vehicle.  *Maryland v. Wilson*, 519 U.S. 408, 415 (1997).  If the officer has a reasonable suspicion that the person may be armed and dangerous, the officer is then permitted to conduct a limited search of an occupant's outer clothing for weapons.  *Johnson*, 555 U.S. at 327.  Reasonable suspicion that an individual is armed and dangerous exists so long as "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  *United*

8

*States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting *Terry*, 392 U.S. at 27).

We evaluate the totality of the circumstances to determine whether such suspicion was reasonable. *United States v. Griffin*, 696 F.3d 1354, 1359 (11th Cir. 2012), *abrogated on other grounds by United States v. Campbell*, 912 F.3d 1340, 1353 (11th Cir. 2019). "[N]ervous, evasive behavior" is a relevant factor to be considered in the totality of the circumstances. *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000); *United States v. Gordon*, 231 F.3d 750, 756 (11th Cir. 2000) (recognizing "that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"). So too may argumentative or non-compliant behavior give rise to a reasonable suspicious that an individual is armed and dangerous. *See United States v. Knight*, 562 F.3d 1314, 1327 (11th Cir. 2009) (determining that a driver's argumentative behavior at the initial stop, among other things, weighed in favor of finding reasonable suspicion existed).

Bishop does not challenge the initial traffic stop, but only whether the deputies had a reasonable suspicion that he was armed and dangerous to justify the pat-down search. He argues that his nervous, fidgety, and defensive behavior, combined with the deputies' knowledge that he had previously been an inmate at the county jail, was insufficient to establish reasonable suspicion.

9

To determine whether a suspicion was reasonable, we evaluate the totality of the circumstances surrounding the stop, including the collective knowledge of all officers involved in the stop. *United States v. Cotton*, 721 F.2d 350, 352 (11th Cir. 1983). In their collective knowledge, the deputies knew that (1) Bishop had been an inmate at the county jail; (2) a woman arrested with heroin earlier that day informed Deputy Floyd that she was heading to Bishop's house; (3) Bishop was argumentative and noncompliant, adamantly refusing to comply with lawful orders to exit the truck; and (4) he was agitated, fidgeting, moving around in his seat, and very defensive.

Viewed in totality, Bishop's known criminal history,[4] non-compliance, argumentativeness, and nervous, agitated behavior following lawful orders to exit the truck would cause a reasonably prudent officer in the circumstances to believe that his safety or that of his fellow officers was in danger. *Hunter*, 291 F.3d at 1306.

"[O]ur courts have repeatedly recognized the danger inherent in traffic stops, particularly when persons other than the driver are present, and the concomitant need to exercise unquestioned command of the situation." *United States v. Gibbs*,

---

[4] To be clear, our decision does not rest primarily on the deputies' knowledge of Bishop's criminal history. We acknowledge that using a defendant's criminal history alone to establish reasonable suspicion may subject all individuals with any type of criminal record to a *Terry* frisk. For that reason, we give this factor little weight relative to the other factors considered by the district court. But when viewed in totality with the other relevant factors, knowledge of a defendant's criminal history could cause a reasonable officer to have heightened safety concerns.

10

917 F.3d 1289, 1297 (11th Cir. 2019) (internal quotation marks omitted).

Exercising command of the situation during a traffic stop may include ordering

both the driver and any passengers out of the vehicle pending completion of the

stop. *See, e.g.*, *Wilson*, 519 U.S. at 415. The deputies were thus lawfully

permitted to order Bishop to exit the truck in the interest of exercising

unquestioned command of the situation. His repeated refusals to comply with

those lawful orders, coupled with his peculiar movements and tense behavior while

seated in the truck, support a finding of reasonable suspicion. *See Wardlow*, 528

U.S. at 124–25; *Gordon*, 231 F.3d at 756; *see also Knight*, 562 F.3d at 1327.

Bishop asserts that none of these factors, standing alone, is sufficient to

establish a reasonable suspicion that he was armed and dangerous. But our

analysis is controlled by the totality of the circumstances, and reasonable suspicion

may thus exist "even if each fact alone is susceptible of innocent explanation."

*United States v. Bautista-Silva*, 567 F.3d 1266, 1272 (11th Cir. 2009) (internal

quotation marks omitted). And to the extent that Bishop argues that the deputies'

knowledge of his criminal history does not definitively establish that weapons were

present during the traffic stop, his argument is misguided. "*Terry* does not demand

definitive evidence of a weapon or absolute certainty that an individual is armed."

*Griffin*, 696 F.3d at 1359. Reasonable suspicion is not concerned with "hard

certainties, but with probabilities" and law enforcement officers may rely on "common sense conclusions." *United States v. Cortez*, 449 U.S. 411, 418 (1981).

Accordingly, we conclude that, based on the totality of the circumstances, the deputies were justified in conducting a limited pat-down search for weapons. We therefore affirm the denial of Bishop's motion to suppress.

## B.  U.S.S.G. § 2K2.1(b)(6)(B)

Bishop next challenges the district court's application of a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for possessing a firearm in connection with another felony offense—namely, possession of one hydromorphone pill.

In challenges to sentencing decisions, we review a district court's determinations of law de novo and its findings of fact for clear error.  *United States v. Barrington*, 648 F.3d 1178, 1194–95 (11th Cir. 2011).  A district court's determination that a defendant possessed a gun "in connection with" another felony offense is a finding of fact that we review for clear error.  *United States v. Whitfield*, 50 F.3d 947, 949 & n.8 (11th Cir. 1995).

U.S.S.G. § 2K2.1(b)(6)(B) provides a four-level enhancement to a defendant's base offense level if he "used or possessed any firearm or ammunition in connection with another felony offense."  "Another felony offense" includes crimes that are punishable by imprisonment for a term exceeding one year under

12

federal, state, or local law, "regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* at cmt. n.14(C). The Application Notes[5] to § 2K2.1(b)(6)(B) state that a firearm is "in connection with" another felony offense if "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.* at cmt. n.14(A). Of relevance here, Application Note 14(B) states that the enhancement automatically applies "in the case of a *drug trafficking offense* in which the firearm is found in *close proximity* to drugs, drug-manufacturing materials, or drug paraphernalia." *Id.* at cmt. n.14(B) (emphasis added). Application Note 14(B) rationalizes the automatic imposition of the enhancement, explaining that the "presence of the firearm has the potential of facilitating another felony offense" in drug *trafficking* cases. *Id.*

Application of the enhancement thus depends on the type of felony alleged. If the offense involves drug trafficking, U.S.S.G. § 2K2.1(b)(6)(B) applies automatically if "the firearm is found in close proximity" to drugs. *Id.* For all other felonies, U.S.S.G. § 2K2.1(b)(6)(B) applies only if the court finds that "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense." *Id.* at cmt. n.14(A).

---

[5] "Commentary and Application Notes of the Sentencing Guidelines are binding on the courts unless they contradict the plain meaning of the text of the Guidelines." *United States v. Wilks*, 464 F.3d 1240, 1245 (11th Cir. 2006) (quotation marks omitted).

Bishop argues that the district court erred in relying on the firearm's proximity to the hydromorphone pill in applying the enhancement because proximity is only relevant when the other felony offense is a drug trafficking crime.  Because possessing one hydromorphone pill is a felony drug possession offense, not a drug trafficking crime, Bishop argues that the district court was required to find that the firearm facilitated, or had the potential to facilitate, the drug possession offense.

The government responds that the record supports the district court's application of the four-level enhancement because the firearm and ammunition facilitated, or had the potential to facilitate, Bishop's possession of drugs and drug paraphernalia.  The government cites to *United States v. Carillo-Ayala* for the proposition that a firearm found "in close proximity to drugs or drug-related items simply '*has*'—without any requirement for additional evidence—the potential to facilitate the drug offense."  713 F.3d 82, 92 (11th Cir. 2013).  The fact that Bishop possessed a firearm in connection with a drug possession offense rather than a drug trafficking crime, the government argues, is therefore immaterial.  We disagree.

The government's reliance on *Carillo-Ayala* is misplaced.  In *Carillo-Ayala*, we considered whether a defendant convicted of drug trafficking was entitled to application of the "safety valve" under U.S.S.G. § 5C1.2(a)(2) to avoid a statutory minimum.  713 F.3d at 87–89.  We determined that a defendant was not entitled to

14

the safety valve if the defendant possessed a firearm "in connection with" the underlying offense. *Id.* at 89–91. We thus reviewed U.S.S.G. § 2K2.1(b)(6)(B) and its corresponding Application Notes to interpret § 5C1.2(a)(2) and concluded that a gun in close proximity to drugs has the potential to facilitate the drug offense. *Id.* at 92. But the government overlooks the fact that we were concerned with the ways in which a firearm could be connected to a drug *trafficking* offense. *Id.* at 97–98. *Carillo-Ayala* thus does not address the specific issue in the instant case: whether proximity between a firearm and drugs is sufficient to trigger U.S.S.G. § 2K2.1(b)(6)(B) when the felony serving as the basis for the enhancement is drug *possession*, not drug trafficking.

Several of our sister circuits have addressed this issue and concluded that the Application Notes clearly indicate that spatial proximity between a firearm and drugs is enough to show a "connection" when the underlying offense is drug trafficking, but something more must be shown for other felonies. *See United States v. Shields*, 664 F.3d 1040, 1045 (6th Cir. 2011) ("[P]roximity that is merely coincidental is not enough for application of § 2K2.1(b)(6) when a defendant merely possessed drugs. . . . To allow otherwise would render the distinction in the Guidelines commentary between drug trafficking and other felonies meaningless.") (internal citations and alterations omitted); *United States v. West*, 643 F.3d 102, 113–14 (3d Cir. 2011); *United States v. Jeffries*, 587 F.3d 690, 693 (5th Cir. 2009)

15

("If [Application Note 14(B)] had intended to allow a 'mere proximity' argument to suffice for all drug crimes, it would have said so.  It did not."); *United States v. Jenkins*, 566 F.3d 160, 163 (4th Cir. 2009); *United States v. Fuentes Torres*, 529 F.3d 825, 827 (8th Cir. 2008) ("[T]he Commission treated drug trafficking offenses and drug possession offenses differently.").

The Eighth Circuit in *United States v. Blankenship*, for example, has explained the distinction:

> [W]ith the addition of Application Note 14, the Sentencing Commission decided to make a distinction between the factual circumstances of when the other felony was a drug trafficking offense, or alternatively, a simple drug possession offense.  If the felony is for drug trafficking, Application Note 14(B) mandates application of the adjustment if guns and drugs are in the same location. . . . If the underlying drug offense is for simple possession, the district court may still apply the adjustment, but only after making a finding that the firearm facilitated [or had the potential of facilitating] the drug offense.

552 F.3d 703, 705 (8th Cir. 2009).

We agree with our sister circuits and hold that mere proximity between a firearm and drugs possessed for personal use cannot support the § 2K2.1(b)(6)(B) enhancement without a finding that the gun facilitated or had the potential to facilitate the defendant's drug possession.  Here, the district court applied the enhancement based solely on the proximity between Bishop's firearm and one hydromorphone pill.  Because Bishop's possession of one hydromorphone pill is a

16

drug possession offense, we conclude that, without a finding that the firearm facilitated, or had the potential of facilitating Bishop's possession of the single pill, the district court erred in applying the enhancement.

The government concedes that the district court did not find that the firearm facilitated Bishop's drug possession offense but argues that we can infer such a finding so long as there is a factual basis in the record to support the enhancement. *See United States v. Robinson*, 493 F.3d 1322, 1334–35 (11th Cir. 2007) (inferring an implied factual finding by the district court that defendant's fraud proximately caused victim's loss).

Specifically, the government argues that the district court recognized certain undisputed facts: (1) that Bishop possessed an unloaded firearm, a loaded magazine, a single hydromorphone pill, and three syringes; and (2) that police recovered empty baggies and a scale from Davis's truck.  The government argues that Bishop was a drug addict at the time of his arrest, indicating that he would be more willing to use his firearm to protect the single pill.  It asserts that these facts are enough to support a finding that the firearm facilitated Bishop's drug possession.  But the fact that the district court recognized undisputed facts does not necessarily mean that the court considered these findings in the context of applying the § 2K2.1(b)(6)(B) enhancement.  The record makes clear that the district court

17

did not rely on these undisputed facts to apply the enhancement, but rather relied exclusively on the gun's proximity to the single hydromorphone pill.

In fact, the government's theory at sentencing rested solely on proximity. *See* Doc. 44 at 5. Thus, the only finding that the district court made in support of applying the enhancement was about proximity.

Though the government contends that there are facts in the record that *may* support the enhancement under the facilitation standard, it simply did not advance that argument at sentencing.[6] Remanding to the district court for resentencing gives the government the opportunity to present its argument on facilitation, thus permitting the district court to apply the enhancement based on the correct standard. And Bishop has the opportunity to present his own evidence to counter a finding that the firearm facilitated or had the potential to facilitate his drug possession—an opportunity that, due to application of an incorrect standard, Bishop was not afforded before. Accordingly, we reverse and remand to the learned district judge who is better able than we are to make this required finding.

---

[6] Several opinions from our sister circuits are instructive. *See United States v. Jackson*, 877 F.3d 231, 237 (6th Cir. 2017) (explaining that a firearm facilitates, or could facilitate, the drug offense if the firearm emboldens the defendant to carry large amounts of drugs); *Jenkins*, 566 F.3d at 164 (noting that application of the enhancement is more appropriate where the defendant possesses a firearm and drugs in public because it suggests a heightened need for protection); *United States v. Swanson*, 610 F.3d 1005, 1008 (8th Cir. 2010) (same); *Shields*, 664 F.3d at 1045–46 (finding it is less appropriate to apply the enhancement when smaller amounts or less valuable drugs are involved because a gun is less likely to be necessary to facilitate possession).

We caution that our holding today should not be confused to mean that the § 2K2.1(b)(6)(B) enhancement could never apply when a defendant possesses a firearm and a small quantity of drugs for personal use. To the contrary, under some circumstances a small quantity of drugs may be more valuable to an addict whose actions are motivated by desperation than a larger quantity may be to someone who is in the business of trafficking drugs. Thus, the fact that just one pill was possessed by a defendant, like Bishop, who was admittedly addicted to drugs, unemployed, and homeless, could actually weigh in favor of, rather than against, a finding that the defendant's firearm has the potential to facilitate his drug possession. These decisions should be based on facts, not assumptions. District judges should consider, if appropriate, factors such as those addressed by our sister circuits, including whether the firearm emboldens the defendant to possess drugs and whether the firearm is loaded and possessed with drugs in public. *See supra* at *18 n.6. We recognize that, upon resentencing, the district judge may reach the conclusion after applying the facilitation standard that § 2K2.1(b)(6)(B) applies. Regardless, the district judge should make that call.

### C. U.S.S.G. § 2K2.1(a)(3)

Bishop argues that the district court erred in applying an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3) because his prior Florida conviction for

19

drug conspiracy under Fla. Stat. § 893.13(1)(a) is not a predicate "controlled substance offense" under the Sentencing Guidelines.

We review de novo whether a prior conviction qualifies as a "controlled substance offense" under the Guidelines. *United States v. Lange*, 862 F.3d 1290, 1293 (11th Cir. 2017). The Guidelines provide that a defendant is subject to an enhanced base offense level of 22 if (1) the offense involved a firearm capable of accepting large capacity magazines; and (2) the defendant committed the instant offense after sustaining a felony conviction for a "crime of violence" or a "controlled substance offense." U.S.S.G. § 2K2.1(a)(3). The Guidelines define a controlled substance offense as an offense that (1) is punishable by over a year in prison, and (2) "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." *Id.* at § 4B1.2(b).

Of relevance here, Florida criminalizes the sale, manufacture, or delivery of a controlled substance, or the possession with intent to sell, manufacture, or deliver a controlled substance. Fla. Stat. § 893.13(1)(a). We have previously held that a conviction under Florida Statute § 893.13(1)(a) is a "controlled substance offense" under the Guidelines. *See United States v. Smith*, 775 F.3d 1262, 1267 (11th Cir. 2014).

Bishop argues that his prior Florida conviction under Florida Statute § 893.13(1)(a) cannot qualify as a predicate "controlled substance offense" under the Guidelines because it lacks a mens rea element with respect to the illicit nature of the controlled substance. Acknowledging that we squarely rejected this argument in *Smith*, 775 F.3d at 1267, he asserts that *Smith* was erroneously decided because we failed to apply a categorical approach to determine whether the Florida offense matches the generic federal offense. We disagree.

We are bound by *Smith* unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). We have previously reaffirmed that *Smith* remains binding precedent. *See United States v. Pridgeon*, 853 F.3d 1192, 1198–2000 (11th Cir. 2017). The district court's application of an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3) was therefore proper.

### III.    Conclusion

After careful review, and with the benefit of oral argument, we affirm the district court's denial of Bishop's motion to suppress evidence seized during the pat-down search. We also affirm the application of an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3). We reverse, however, the district court's application of the four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B), and remand for further proceedings consistent with this opinion.

21

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**