[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13678
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cr-00028-RWS-JCF-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEONTAE C. THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 7, 2020)

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Deontae Thomas appeals his convictions for possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841(a) and (b)(1)(C), possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a) and (b)(1)(B)(viii), and possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  On appeal, Thomas argues that the district court should have suppressed evidence from the traffic stop that led to the discovery of the drugs and the firearm because it was unconstitutionally prolonged.  After careful review, we affirm.

I.

On December 2, 2016, Brandon Holcomb, a deputy with the Habersham County Sheriff's Office, observed a vehicle speeding, failing to maintain its lane, and changing lanes without signaling.  Suspecting that the driver was under the influence of alcohol or drugs, he initiated a traffic stop.

When the vehicle stopped, the deputy approached the driver, Deontae Thomas.  The deputy asked for Thomas's driver's license, explained the reason for the stop, and began assessing the driver for signs of impairment.  He did not smell alcohol or marijuana.  As a part of this assessment, the deputy asked Thomas where he was headed.  Thomas gave a series of confusing answers.  He initially said that he was going to Gainesville even though he was 25 miles north of Gainesville and traveling north.  He also said that he was staying in Gainesville

2

and traveling to Wal-Mart but could not provide a reasonable explanation for why he would travel to another city instead of going to a Wal-Mart in Gainesville. In addition to being nonsensical, both destinations were inconsistent with a cellphone GPS app visible on the dashboard indicating that the destination was 52 miles away, due north. When asked about the GPS, Thomas claimed that the phone was not his, but belonged to his female passenger. During this conversation, the deputy noticed that Thomas was avoiding eye contact and was getting frustrated with the questions. The evasive answers led Deputy Holcomb to suspect that Thomas might be involved in the illegal transportation of narcotics.

Deputy Holcomb asked Thomas to exit the vehicle. Thomas refused multiple times before the deputy told him that he did not have a choice. After exiting the vehicle, the deputy asked if Thomas was carrying any weapons and received permission to search Thomas's person. The deputy found a roll of $500 in cash in Thomas's pocket and thought that carrying so much money was unusual.

Following the pat-down, the deputy asked Thomas to walk to the front of the patrol car. He did this because he wanted to administer the field sobriety tests in view of the camera, which was in the front windshield of the police car. Thomas did not comply. After telling him numerous times to walk to the front of the patrol car, the deputy drew his taser in order to maintain control of the situation. At this point Thomas complied, and the deputy reholstered his taser once Thomas was in

3

front of the patrol car. Thomas and the deputy then spoke for a few minutes about Thomas's failure to comply with instructions and about the inconsistent travel plans. The deputy asked Thomas if he had illegal narcotics in the vehicle. Thomas said that he did not, but refused to give the deputy consent to search his vehicle.

Just as Deputy Holcomb began to administer the first field sobriety exercise, a second officer walked up and began speaking with Thomas. Deputy Holcomb took this opportunity to walk over and speak with the female passenger to compare her account of their travel plans and to ask about Thomas's impairment—a common police practice when investigating potentially impaired drivers. He believed that her story was inconsistent with Thomas's and with the GPS display. While walking back from questioning the passenger, the deputy noticed a wrapped, square, cellophane bundle concealed beneath a jacket in the backseat of the vehicle. Because of his training, he immediately suspected the bundle of being illegal narcotics.

Following this observation, which occurred approximately fourteen minutes into the stop, the deputy believed he had probable cause to search the vehicle. He placed Thomas in handcuffs and called a state magistrate judge to secure a search warrant for the car. The magistrate judge told Deputy Holcomb that he would have to tow the vehicle, detain the occupants, and come meet her in person to get the

4

warrant.  The deputy told her that he needed to finish his field sobriety evaluations and that he would call the judge back if needed.

Following the phone call, Deputy Holcomb read Thomas his *Miranda* rights and removed the handcuffs.  Thomas consented to the field sobriety evaluations and then the deputy performed a series of tests.  On the basis of Thomas's performance, as well as the reddening of his conjunctiva and other observations, Deputy Holcomb arrested Thomas for driving under the influence of alcohol or drugs.

Following the arrest, Deputy Holcomb and other officers searched the vehicle and found three large packages of narcotics (two of methamphetamine and one of heroin), a pill in Thomas's wallet, additional methamphetamine in the passenger's purse, and a loaded firearm in between a front seat and the center console.

Thomas was indicted on charges of possessing heroin with intent to distribute, in violation of 21 U.S.C. § 841(a) and (b)(1)(C), possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a) and (b)(1)(B)(viii), and possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Before trial, Thomas filed a motion to suppress the evidence seized from his vehicle.  The motion was denied, he was

convicted by a jury on all counts, and he was sentenced to a total term of 144 months imprisonment.  Thomas filed a timely notice of appeal.

## II.

We apply a mixed standard of review in analyzing a district court's denial of a defendant's motion to suppress, reviewing findings of fact for clear error and the district court's application of the law to those facts de novo.  *United States v. Ramirez*, 476 F.3d 1231, 1235–36 (11th Cir. 2007).  "Absent clear error, we are bound by the district court's findings of fact and credibility choices."  *United States v. Hawkins*, 934 F.3d 1251, 1259 (11th Cir. 2019).

## III.

Thomas's only argument on appeal is that the district court erred by denying his motion to suppress.  In his view, Deputy Holcomb prolonged the traffic stop such that it violated his rights under the Fourth Amendment.

A traffic stop may be justified by reasonable, articulable suspicion that the individual has committed a traffic violation.  *See Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  The "tolerable duration" of such a seizure is limited to the time it takes "to address the traffic violation that warranted the stop," and the authority for the seizure "ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."  *Id.*  A "stop is unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and

6

adds time to the stop in order to investigate other crimes." *United States v. Campbell*, 912 F.3d 1340, 1353 (11th Cir.), *cert. denied*, 140 S. Ct. 196 (2019), *reh'g denied*, 140 S. Ct. 633 (2019).

Certain ordinary inquiries and actions that are incidental to the traffic stop are allowed. These include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez*, 575 U.S. at 355. We have also held that, generally speaking, "questions about travel plans are ordinary inquiries incident to a traffic stop." *Campbell*, 912 F.3d at 1354. In addition, police officers conducting a lawful traffic stop may take steps that are "reasonably necessary to protect their personal safety" and may order the driver to get out of the car "as a matter of course." *United States v. Gibbs*, 917 F.3d 1289, 1295 (11th Cir. 2019) (quotation marks and citation omitted).

Beyond these incidental inquiries, an officer may prolong a stop to inquire into unrelated matters only if he develops reasonable suspicion that another crime has been committed. *Campbell*, 912 F.3d at 1353. When determining whether reasonable suspicion exists, we review the totality of the circumstances to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In so doing, we give due weight to the officer's experience. *United States v.*

*Briggman*, 931 F.2d 705, 709 (11th Cir. 1991).  Factors that may contribute to the formation of reasonable suspicion include a suspect's nervous and evasive behavior, inconsistent answers regarding travel plans, and refusal to comply with an officer's lawful orders.  *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000); *United States v. Boyce*, 351 F.3d 1102, 1109 (11th Cir. 2003), *United States v. Bishop*, 940 F.3d 1242, 1249 (11th Cir. 2019).  Additionally, a police officer has probable cause to search a vehicle when he sees contraband in the vehicle in plain view.  *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009).

Here, we find no constitutional violation.  Thomas does not challenge the validity of the initial stop; he concedes that Deputy Holcomb had reasonable suspicion to stop his vehicle and to investigate whether Thomas was driving under the influence.  His only argument is that the deputy unnecessarily prolonged the stop by inquiring into matters that were unrelated to the traffic violations.  We are not persuaded.

Deputy Holcomb's initial conduct upon approaching the vehicle was related to the purpose of the stop and to his personal safety.  His questions about where Thomas was headed were related to the traffic violation because travel plans are generally appropriate subjects of inquiry incident to a traffic stop.  *Campbell*, 912 F.3d at 1354.  This logic applies with even more force in the context of a DUI investigation, where a driver's confusion or disorientation could be indicative of

8

impairment.  Likewise, Deputy Holcomb's request for Thomas to exit the vehicle—allowable as a matter of course in any event—was also related to the purpose of the stop and the need to conduct field sobriety evaluations.  Finally, Deputy Holcomb's request to search Thomas for weapons before conducting the sobriety evaluations was related to officer safety.

In the course of this conduct—all of which was related to a DUI investigation—Deputy Holcomb was able to observe things that justified reasonable suspicion that some additional wrongdoing might have been afoot. Thomas provided inconsistent and evasive answers to simple questions about his travel plans—answers that were inconsistent with the data visible on the GPS display.  Additionally, Thomas was reluctant to exit the vehicle, acted nervously throughout the stop, had bloodshot eyes, was carrying $500 in cash on his person, and was reluctant to comply with the deputy's instructions.  The totality of these circumstances justified Deputy Holcomb's subsequent questions to Thomas about the presence of drugs in the car and brief questioning of the passenger.

The additional questioning, coupled with the remainder of the DUI investigation, unearthed additional information that further contributed to the Deputy's reasonable suspicion.  The plainly visible bundle of suspected narcotics, the passenger's inconsistent explanation about the reason for their trip, and Thomas's performance on the field sobriety evaluations all amounted to at least a

9

"particularized and objective basis" to believe that illegal drugs might have been in the vehicle. *Arvizu*, 534 U.S. at 273.

In sum, the district court did not err in denying Thomas's motion to suppress. The totality of the circumstances supports Deputy Holcomb's reasonable suspicion that Thomas was involved in criminal activity. Thus, even if the traffic stop was prolonged beyond the time needed to accomplish its original purpose of conducting a DUI investigation, such detention was not unconstitutional. Accordingly, we affirm.

**AFFIRMED.**