[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-10194

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KEEO MILLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 4:18-cr-00169-LGW-CLR-1

_____

Before WILSON, LUCK, and EDMONDSON, Circuit Judges.

PER CURIAM:

Keeo Miller appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). No reversible error has been shown; we affirm.

## I.

Miller's conviction stems from a traffic stop in May 2018. An undercover officer observed an interaction between a car's driver and a passenger: conduct the officer believed was indicative of a drug deal. Shortly thereafter, the undercover officer saw the driver -- later identified as Miller -- fail to come to a complete stop at a stop sign. Because the undercover officer was driving an unmarked vehicle without lights or a siren, he called over the radio for a uniformed officer to conduct a traffic stop.

Detective Foraker – in uniform and with a marked police car -- initiated the traffic stop. When Detective Foraker approached Miller's car, Miller appeared nervous. Detective Foraker also saw a "large bulge" in the front pocket of Miller's pants: a bulge Detective Foraker believed could be a gun. Detective Foraker asked Miller for his driver's license. Detective Foraker gave Miller's license to a second officer (Detective Smith), who checked for outstanding warrants while Detective Foraker continued to deal with Miller.

Detective Foraker then ordered Miller to step out of the car. Miller did not comply immediately. Instead, Miller got out of the

car only after being ordered to do so four more times. During this exchange, Detective Smith advised Detective Foraker that Miller had an outstanding warrant for Miller's arrest.

When Miller exited the car, Detective Foraker conducted a *Terry*[1] pat-down search of Miller's person. That the bulge in Miller's pocket was actually a gun was "immediately apparent" to Detective Foraker. The officers handcuffed Miller and removed the gun from his pocket. Miller was placed under arrest.

A federal grand jury indicted Miller for being a felon in possession of a firearm. Miller pleaded not guilty and proceeded to a jury trial. Following a one-day trial, the jury found Miller guilty.

Miller moved for a judgment of acquittal and, alternatively, for a new trial. Miller raised two arguments: (1) that the government failed to prove that Miller had "knowingly possessed" a firearm; and (2) that the failure of Miller's lawyer to move to suppress the firearm constituted ineffective assistance of counsel.

The district court denied Miller's motion. The district court determined that the evidence presented at trial was sufficient to support a finding that Miller possessed knowingly the firearm. The district court also declined to address Miller's ineffective-assistance-of-counsel claim, explaining that such claims should be raised in a

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

28 U.S.C. § 2255 motion.  The district court later sentenced Miller to 115 months' imprisonment.  This appeal followed.

## II.

### A.

On appeal, Miller first challenges the lawfulness of the initial traffic stop, the duration of the traffic stop, and the pat-down search that led to the seizure of the gun found in Miller's pocket.  Given these purported Fourth Amendment violations, Miller contends the gun should have been excluded from evidence.

The Federal Rules of Criminal Procedure provide that a motion to suppress evidence "must" be made before trial.  *See* Fed. R. Crim. P. 12(b)(3)(C).  When a party fails to file a timely motion under Rule 12(b)(3), a court may consider arguments about suppression upon a showing of "good cause."  *See* Fed. R. Crim. P. 12(c)(3).  We have said that no good cause exists to excuse an untimely suppression motion when "the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date."  *See United States v. Curbelo*, 726 F.3d 1260, 1266-67 (11th Cir. 2013) (in the context of applying an earlier version of Rule 12).

Miller filed no pre-trial motion to suppress the gun seized during the traffic stop.  Nor did Miller object to the admissibility of the gun into evidence at trial.  On appeal, Miller offers no argument that good cause exists that might excuse his failure to raise timely

20-10194                 Opinion of the Court                        5

arguments about suppression.[2]  Miller had available to him all the pertinent information necessary to raise his Fourth Amendment arguments before trial and failed to do so.  Because Miller has demonstrated no good cause, we decline to consider Miller's untimely-raised Fourth Amendment challenges to the traffic stop and to the pat-down search.[3]

_____

[2] In his motion for a new trial in the district court, Miller argued that his lawyer's failure to move to suppress the gun constituted ineffective assistance of counsel.  Miller makes no assertion on appeal that his lawyer's alleged ineffective assistance constituted good cause.  Nor would we likely address such an argument at this stage of the proceedings.  See United States v. Nix, 438 F.3d 1284, 1288 (11th Cir. 2006) (declining to consider on direct appeal a defendant's argument that his trial lawyer's failure to move to suppress the gun seized in that case constituted ineffective assistance); United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) ("We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record.").

[3] Even if we were to consider the merits of Miller's Fourth Amendment arguments, those arguments would seem to fail.  Reasonable suspicion existed to initiate the traffic stop based on the undisputed evidence that Miller failed to come to a complete stop at a stop sign.  See United States v. Campbell, 26 F.4th 860, 880 (11th Cir. 2022) (en banc) (explaining that "[e]ven minor traffic violations qualify as criminal activity" that give rise to reasonable suspicion to make a traffic stop).

The record also demonstrates that -- before probable cause arose to arrest Miller based on the outstanding arrest warrant and the discovery of Miller's gun -- the officers made no inquiries and performed no tasks unrelated to the traffic stop that extended impermissibly the duration of the stop.  See id. at 884 ("[A] stop is unlawfully prolonged when an officer, without reasonable

B.

Miller next challenges the district court's denial of his post-trial motion for judgment of acquittal.

"We review *de novo* a district court's denial of judgment of acquittal on sufficiency of evidence grounds." *United States v. Rodriguez, 732* F.3d 1299, 1303 (11th Cir. 2013). In determining the sufficiency of the evidence, "we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor." *Id.* We cannot overturn a jury's verdict unless no "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.*

---

suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes.").

Also, the totality of the circumstances involved in this case -- including that Miller had just engaged in conduct indicative of drug-trafficking, that Miller had a visible bulge in his front pocket, and that Miller appeared nervous and was hesitant to exit the car despite repeated orders to do so -- gave rise to reasonable suspicion that Miller might be armed and, thus, justified a pat-down search of Miller's person for officer safety. *See United States v. Bishop*, 940 F.3d 1242, 1248-49 (11th Cir. 2019) (concluding that the defendant's "non-compliance, argumentativeness, and nervous, agitated behavior following lawful orders to exit the truck would cause a reasonably prudent officer in the circumstances to believe that his safety or that of his fellow officers was in danger"); *United States v. Hunter*, 291 F.3d 1302, 1306 (11th Cir. 2002) (noting that "the presence of a visible, suspicious bulge on an individual may be considered in the totality of the circumstances" when determining whether a stop-and-frisk was supported by reasonable suspicion).

To obtain a conviction under section 922(g), "the government must prove all of the following elements: (1) the defendant knew he possessed (2) a 'firearm' . . . that (3) had traveled in interstate commerce, and" (4) the defendant knew of his status as a felon. *See United States v. Johnson*, 981 F.3d 1171, 1179 (11th Cir. 2020); *see also Rehaif v. United States*, 139 S. Ct. 2191, 2200 (2019) ("[I]n a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.").

On appeal, Miller does not identify expressly which of these elements the government purportedly failed to prove. Viewed in the light most favorable to the government, the evidence presented at trial was sufficient to permit a reasonable factfinder to find Miller guilty beyond a reasonable doubt of the charged offense.

The evidence was sufficient for the jury to conclude that Miller possessed knowingly the gun. At trial, two officers testified that they found a gun in the front pocket of Miller's pants: testimony that was corroborated by a video recording of the pat-down search. The government also presented Miller's post-*Miranda*[4] statement that he acquired the gun about a month before this incident.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The government also produced witness testimony that the gun was manufactured in Maryland and, thus, had moved in interstate commerce to travel to Georgia.

Miller also stipulated that he had a 2008 felony conviction for unlawful possession of a firearm by a felon. This evidence was sufficient to support a finding that Miller knew of his status as a felon when he possessed the gun in 2018.

Because the evidence produced at trial was sufficient to allow the jury to find Miller guilty beyond a reasonable doubt, the district court committed no error in denying Miller's motion for judgment of acquittal.

AFFIRMED.