[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10224

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

NATHAN COOPER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20286-BB-1

_____

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Nathan Cooper appeals his conviction for one count of possession of a firearm and ammunition by a convicted felon. Cooper argues that the district court erred when it denied his motion to suppress because there was not reasonable suspicion that he committed a crime or that he was armed and dangerous. Cooper argues that because Officer Ramirez did not have reasonable suspicion, the Officer violated his Fourth Amendment rights when she stopped and frisked him. Cooper argues that because his rights were violated, the firearm found should be suppressed.

We review the denial of a defendant's motion to suppress under a mixed standard, assessing the lower court's factual findings for clear error and its application of law to those facts *de novo*. *United States v. Vargas*, 848 F.3d 971, 973 (11th Cir. 2017). When considering a ruling on a motion to suppress, "all facts are construed in the light most favorable to the prevailing party below." *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). A factual finding is clearly erroneous if, after reviewing all the evidence, we have a definite and firm conviction that the district court made a mistake. *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010). We accept the district court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015) (quotation

23-10224                    Opinion of the Court                    3

marks omitted).  Questions of probable cause and reasonable suspicion are reviewed *de novo*.  *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

Under the Fourth Amendment, individuals have the right "to be secure in their persons . . . against unreasonable searches and seizures."  U.S. Const. amend. IV.  A court must examine the totality of the circumstances to determine reasonableness under the Fourth Amendment.  *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).

The exclusionary rule prohibits the use of evidence seized during, or as a result of, an unlawful search.  *Murray v. United States*, 487 U.S. 533, 536 (1988).  "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."  *Herring v. United States*, 555 U.S. 135, 144 (2009).

Officers "may briefly detain a person as part of an investigatory stop if they have a reasonable articulable suspicion based on objective facts that the person has engaged in criminal activity."  *United States v. Bruce*, 977 F.3d 1112, 1116 (11th Cir. 2020) (*citing, inter alia*, *Terry v. Ohio*, 392 U.S. 1 (1968)).  Although a mere hunch that criminal activity is afoot is not enough to establish reasonable suspicion, the standard is a less demanding one than probable cause, and requires a showing less than preponderance of the evidence.  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

The Supreme Court has held that an officer may frisk a legally stopped individual for weapons if he reasonably believes that

his or others' safety is threatened. *Terry*, 392 U.S. at 27. This belief must be based on a reasonable suspicion that the individual is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 332 (2009). Definitive evidence of a weapon or an absolute certainty that the individual is armed is not required. *United States v. Bishop*, 940 F.3d 1242, 1250 (11th Cir. 2019). Instead, we evaluate the totality of the circumstances to determine whether such suspicion was reasonable. *United States v. Johnson*, 921 F.3d 991, 998 (11th Cir. 2019) (*en banc*). Circumstances considered include "the time of day, the location of the scene, the lighting at the scene, the number of officers, and the nature of the alleged crime." *Id.* A person's nervous, argumentative, or evasive behavior are relevant factors to be considered. *Bishop*, 940 F.3d at 1248-49. The reasonable suspicion inquiry "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation marks omitted).

Here, the court did not err when it denied Cooper's motion to suppress because the officers had reasonable suspicion to stop and frisk Cooper. First, the court properly found that Officer Ramirez, based on her training and experience inferred based on the information presented to her that criminal activity was about to or did occur. *Arvizu*, 534 U.S. at 273. As the court properly explained, there was reasonable suspicion based on the dispatch call and Jenema Phillips' statements to Ramirez when Ramirez arrived on scene. The dispatch call informed Ramirez that Phillips (the

manager of the restaurant) had called 911 and said that her employee, Cooper, had threatened her, that she thought he had a gun, and that she would be waiting for the officer outside the restaurant. Ramirez arrived and talked to Phillips outside the restaurant. Phillips explained the dispute with Cooper, that he was aggressive and was slinging a metal poker around, and that he grabbed the bookbag in which she thought he carried a gun. Based on this information, the court did not err in its finding that there was reasonable suspicion that Cooper had engaged in or was about to engage in criminal activity. Taken as a whole, in light of the officers' experience and knowledge, these circumstances were enough to create reasonable suspicion that criminal activity was afoot. *Bruce*, 977 F.3d at 1116.

Second, the court properly found that Ramirez had reasonable suspicion to stop and frisk Cooper as she had reasonable grounds to believe that Cooper was armed and dangerous. *Terry*, 392 U.S. at 27-29. As the court properly found, Ramirez was informed by the dispatch call and by Phillips when Ramirez arrived on scene that Cooper and Phillips had a dispute which resulted in Cooper cursing, behaving aggressively, and slinging a metal poker around. Ramirez was also informed by Phillips, whom the court found was reliable, that Cooper would carry a gun in his bookbag and that he told her that he had previously sold a gun to another employee. Phillips also conveyed to Ramirez that during the dispute Cooper grabbed his bookbag in which she believed he kept a gun. Ramirez had been informed by the dispatch call that Phillips had reported that Cooper had threatened her, that he had a gun,

and that she would be waiting for the officers outside the restaurant. We agree with the district court that Ramirez's own conversation with Phillips outside the restaurant when Ramirez arrived on the scene did not disabuse the Officer of her reasonable belief that Phillips felt threatened and concerned for her safety and that of her employees.[1] Additionally, Ramirez testified that this call occurred at night in a high crime area. *Johnson*, 921 F.3d at 998. Based on the information presented to Ramirez and on her training and experience, the court properly found that she had reasonable suspicion that Cooper was armed and dangerous.

Additionally, the court found that Phillips was reliable because of her relationship with Cooper and her actions on the day of the incident. This finding is not inconsistent or improbable on

---

[1] In his brief on appeal, Cooper asserts in conclusory fashion that when Phillips spoke to Ramirez at the scene, she specifically denied that Cooper had threatened her. Cooper argues that the Officer should have realized that the threat mentioned in the dispatch call was in error and therefore that there was not a reasonable suspicion that Cooper was armed and dangerous. On the basis of our careful review of the colloquy between Ramirez and Phillips at the scene (as recorded on the body cam video), we reject Cooper's assertion and argument. Although Phillips did acknowledge that Cooper never threatened her "directly," in the same breath she clearly implied that she felt threatened when he grabbed his bookbag in which she thought he carried a gun. And the totality of the colloquy conveyed to Ramirez that Phillips felt threatened by Cooper's aggressive actions and her knowledge that he kept a gun in his bookbag, and that Phillips was concerned for her safety. The fact that Phillips, the manager of the restaurant, waited outside the restaurant for the officers and did not reenter with them when they went to confront Cooper was also confirmation for Ramirez that Phillips was concerned for her safety.

23-10224               Opinion of the Court                 7

its face and is supported in the record. *Holt*, 777 F.3d at 1255. Based on Phillips's conversation with Ramirez when she arrived on scene as well as her 911 call, there is evidence that a reasonable factfinder could accept that demonstrates that Phillips was credible. *Id.*

Therefore, based on the totality of the circumstances, the court did not err when it found that Ramirez had reasonable suspicion that Cooper was armed and dangerous, and thus, properly stopped and frisked him to search for weapons. *Terry*, 392 U.S. at 27-29. As the court properly noted, it did not matter that Ramirez was not absolutely certain that Cooper had a weapon but only that she had reasonable suspicion. *Bishop*, 940 F.3d at 1250. Therefore, it did not matter that neither Phillips nor Ramirez saw Cooper with a gun on the day of the incident.

For the foregoing reasons, the district court did not err when it denied Cooper's motion to suppress.[2]

**AFFIRMED.**

---

[2] We reject Cooper's argument that *Terry* frisks are unconstitutional because they are contrary to the Fourth Amendment's original meaning. We are bound by the Supreme Court's decisions until they overrule them. *United States v. Hatter*, 532 U.S. 557, 567 (2001)( "[I]t is the Supreme Court's prerogative alone to overrule one of its precedents.").